STATE OF CONNECTICUT *v.* ANTHONY VESSICHIO
(11550)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and STOUGHTON, Js.

Argued October 10—decision released November 26, 1985

*William F. Dow III,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom were *Patrick J. Clifford,* assistant state's attorney, and, on the brief, *Arnold Markle,* state's attorney, for the appellee (state).

DANNEHY, J. A jury found the defendant guilty of conspiracy to sell a narcotic substance; General Statutes §§ 21a-277 (a) and 53a-48 (a); and guilty of three counts of distributing or transporting a narcotic substance with intent to sell or dispense. General Statutes § 21a-277 (a). He claims on appeal that the trial court erred: (1) in failing to instruct the jury that the state was required to prove beyond a reasonable doubt that the narcotic substance was cocaine; (2) in denying the defendant's request to charge on the lesser included offense of possession of a narcotic substance; (3) in admitting the out-of-court statements of an alleged coconspirator; (4) in refusing to strike the testimony of the state's key witnesses whose field notes were intentionally destroyed; and (5) in admitting evidence of other crimes. We find no error.

The state's principal witness was Ellis Crawford, a Stratford policeman who, in 1979 and 1980, was working as an undercover agent for the statewide narcotics task force. Crawford, who never met the defendant, testified extensively about his purchases of cocaine, on five separate occasions, from the defendant's intermediary and alleged co-conspirator, Mark Violano. Crawford's most damaging testimony was that relating to certain statements, made to him by Violano, confirming the defendant's involvement in the illegal cocaine transactions. Crawford's testimony was corroborated in large measure by the testimony of surveillance officers who "covered" Crawford during his dealings with Violano. Violano himself did not testify at the defendant's trial.

The first purchase was made on October 29, 1979. Crawford met Violano at Soffer's Barn restaurant in New Haven, where, after testing a sample of cocaine provided to him, he agreed to purchase a quarter of an ounce for $500. Violano drove Crawford to the intersection of Glen Haven and Norwood Avenues. There, according to Crawford, Violano said the "man he purchased the drug from, his source, lives around the corner." The defendant's motor vehicle registration listed his address as 145 Glen Haven Avenue. Violano left on foot, returning in several minutes without the cocaine, explaining that his source needed more time to cut the package. While they waited, Violano told Crawford that his source was a childhood friend and described him as a "fat slob." Violano again left, on foot, and returned a few minutes later with the cocaine. In the future, Violano told Crawford, "just let [me] know, [my] source always [has] a package."

Crawford and Violano met again at the Soffer's Barn restaurant on November 27, 1979. Violano stated that "fat boy," his source, "had been dealing for a while, [was] kind of concerned about cops, [and] wouldn't sell to anyone he did not know." Violano brought Crawford to his home where, shortly thereafter, the defendant drove up in a gray van. After receiving $500 from Crawford, Violano left the house and entered the van, leaving the front passenger door open. Crawford observed through the living room window as Violano handed "what appeared to be my money to the defendant, who handed him a packet I could see." Violano then returned to the house and delivered to Crawford a packet, which Crawford tested and found to be cocaine.

Officer George Nobile, also of the statewide narcotics task force, provided surveillance and protective cover for Crawford during his dealings with Violano. On November 27, 1979, during the second transaction, Nobile placed himself where he could observe both the

parking lot of Soffer's Barn restaurant and the home of Mark Violano, which was located less than one block away. He first observed the defendant drive up to Violano's house in his gray van. He saw the defendant enter the house, remain for several minutes, and then leave. He next observed Crawford arrive at Soffer's Barn restaurant and park his vehicle to await Violano. Violano soon left his house and drove to the restaurant where he met Crawford. After speaking briefly in the restaurant parking lot, Violano brought Crawford back to his house. Shortly thereafter, the defendant arrived once again in his gray van. Nobile saw Violano leave the house and enter the van, but he could not see what occurred inside. After a few minutes, Violano exited from the van, and the defendant drove away.

The third transaction took place three days later, on November 30, 1979, at Violano's residence. This time, while Crawford and Violano waited in the latter's home, the defendant drove up in a brown Ford LTD which was registered to Nancy Vessichio of the defendant's address. Crawford gave Violano $1000, Violano entered the defendant's vehicle, and he returned with half an ounce of cocaine. Violano told Crawford that he would "talk to Ant about getting a better price."

The next transaction occurred on December 11, 1979, once again at Violano's residence. Violano informed Crawford that "Ant" was going to send someone else with the cocaine, and that "Ant" was "going to be driving around the neighborhood to see if there were any cops." Soon, Claude Vergutto arrived on a motorcycle with one-half ounce of cocaine, for which Crawford paid $850. Nobile, conducting surveillance, observed the defendant in his gray van driving slowly through the neighborhood during the transaction. After Crawford left the house, Nobile saw the defendant's van pull up, and Violano and Vergutto enter.

The final transaction took place on January 10, 1980. Shortly after Crawford arrived at Violano's home, the defendant drove up in the brown Ford LTD. Crawford gave Violano $2000, and Violano went to the car and returned several minutes later with two packages of cocaine. Crawford expressed dissatisfaction with the high prices being charged and told Violano that instead of buying through him he would rather buy directly from the "source." Violano, who was temporarily unemployed, responded that he would soon be returning to work and thus "getting out of the business." According to Crawford, Violano told him "that from then on he would turn me on to Anthony; because he believed Anthony trusted me at that point." Before Crawford could make a direct purchase from the defendant, however, the investigation was terminated for lack of funding.

Additional facts will be discussed as we consider the various claims raised by the defendant.

I

The defendant first claims that the trial court erred by failing to instruct the jury that the state was required to prove beyond a reasonable doubt that the substance purchased by Crawford from Violano was cocaine. An essential element of the crime of transporting a narcotic substance with the intent to sell; General Statutes § 21a-277 (a); is that the substance transported be a "narcotic substance" as defined in General Statutes § 21a-240 (30). The defendant did not apprise the trial court of its purported failure to instruct on this element; he brings his claim under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). "The right to be acquitted unless proven guilty beyond a reasonable doubt of each element of the charged offense is a fundamental constitutional right protected by the due process clauses of the federal and Connecticut constitutions. U.S. Const., amend. XIV; Conn. Const., art. I § 8; see *In*

*re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Gabriel,* 192 Conn. 405, 413–14, 473 A.2d 300 (1984). This court has consistently held that colorable claims that jury instructions violated this aspect of due process are appealable even when not raised below. See, e.g., *State* v. *DeMatteo,* 186 Conn. 696, 705–706, 443 A.2d 915 (1982); *State* v. *Perez,* 181 Conn. 299, 311, 435 A.2d 334 (1980); *State* v. *Arroyo,* 180 Conn. 171, 173–74, 429 A.2d 457 (1980)." *State* v. *Smith,* 194 Conn. 213, 217, 479 A.2d 814 (1984).

Upon review of the trial court's entire charge, it becomes apparent that the defendant mischaracterizes the instructions relating to proof beyond a reasonable doubt that the substance was cocaine. The trial court correctly charged the jury twenty-three times on the principle of reasonable doubt, and this tally does not include the court's opening instructions on the general meaning of reasonable doubt. In its charge, the trial court stated repeatedly that the defendant was accused of transporting "a narcotic substance, to wit, cocaine," in close connection with its further instructions that the state must prove each and every element of the crimes charged beyond a reasonable doubt. We simply do not agree that the jury could possibly have been misled on this point. A portion of the charge is printed in the footnote.[1]

---

[1] "There are four counts, the first three concern the claim by the State, that this defendant did transport, or distribute with the intent to sell, or dispense to another person, one, Mark Violano, a narcotic substance to wit cocaine in violation of Connecticut Statutes. The first incident with which he's charged supposedly took place on the 27th day of November, 1979 at approximately 1:10 p.m. in the area of 448 Middletown Avenue. You may ask yourself whether or not the state has proved beyond a reasonable doubt, that the defendant on November 27th, 1979 at approximately 1:10 p.m. in the area of 448 Middletown Avenue, [did] distribute or transport with the intent to sell to another person, Mark Violano, a narcotic substance to wit cocaine. You will note from reading the information that I have omitted the word dispense; because there is no evidence in the case to warrant you considering that portion of the charge. There are other words in that statute that require definition, although on the face of them they appear simple enough

The defendant's essential complaint is that the trial court did not "define the meaning of the words narcotic substance or instruct the jury specifically that the nature of the substance was an element of the crime which the [s]tate had to prove beyond a reasonable doubt." With regard to the definition of "narcotic substance," the trial court correctly instructed the jury that "cocaine is a narcotic substance." Under our law, the jury was not at liberty to conclude otherwise. General Statutes § 21a-240 (30). In this case the defendant was accused of transporting only one type of narcotic substance, cocaine, and no other. Therefore, it was unnecessary for the trial court to define "narcotic substance" as if the jury were required to determine for itself whether cocaine fell within that definition. The charge was "correct in law and adapted to the issues," as our cases require. See, e.g., *State* v. *Mason,* 186 Conn. 574, 585, 442 A.2d 1335 (1982).

As to the defendant's assertion that the trial court did not "specifically" instruct the jury that the nature of the substance was an element of the crime, we agree that it would have been preferable for the court to have made such an instruction. We note, however, that this language was not suggested at trial, and we do not require technical perfection in jury instructions. *State*

---

to understand. Distribute means to deliver. Deliver, means the actual transfer to one person to another. Transport, means to carry or convey from one place to another. Sell, means to dispose by sale. And a sale is any form of delivery which includes barter, exchange, or gift, or offer therefore, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee. And cocaine is a narcotic substance. So, you must ask yourself whether or not the state has established beyond a reasonable doubt, based on the testimony you heard, and the testimony you find credible, whether or not on the 27th day of November, 1979 at approximately 1:10 p.m. in the area of 448 Middletown Avenue, the said defendant Anthony Vessichio, did distribute, or transport with the intent to sell; as I've defined the word intent, to another person, one, Mark Violano, a narcotic substance to wit cocaine. If you find each and every element of that crime established beyond a reasonable doubt, you will find him guilty of that, otherwise you will find him innocent of that charge."

v. *Mason,* supra. The relevant issue, insofar as this claim of error is concerned, is whether or not the jury reasonably understood from the instructions that the state was obliged to prove beyond a reasonable doubt that the defendant transported cocaine. Two expert witnesses presented by the state, Wayne Phillips, a forensic chemist with the federal drug enforcement administration, and Joel Milzoff, a toxicologist for the state of Connecticut, testified that they tested the substance and found that it was cocaine. Officer Crawford testified that while working undercover he field tested the substances received, in the presence of Violano, to make sure that he was purchasing cocaine. And finally, reproduced in the footnote, is a single segment of the trial court's charge, representative of the whole, which convinces us that the jury was adequately instructed that it was required to find beyond a reasonable doubt that the substance was cocaine.[2]

Viewing the charge as a whole, we do not believe that it is reasonably possible that the jury was misled by the court's failure to instruct specifically that the nature of the substance must be proved by the state beyond a reasonable doubt. See *State* v. *Torrence,* 196 Conn. 430, 436, 493 A.2d 865 (1985).

## II

The defendant next claims that the trial court erred in denying his request to charge on the lesser included offense of possession of a narcotic substance, in viola-

---

[2] "The claim is exactly the same by the state, that he distributed it, or transported with the intent to sell to Mark Violano, cocaine. Again, if each and every element of that count has been established beyond a reasonable doubt, then you shall find the defendant guilty of that count, otherwise you must find him innocent. The third count is like the other two, except that the date is again a different date; it's January 10th, 1980, at approximately 3:35 p.m. in the area of 448 Middletown Avenue. If you find each and every count—each and every element of that count established beyond a reasonable doubt by the testimony introduced, then you will find the defendant guilty of that count. Otherwise you must necessarily find him not guilty."

tion of General Statutes § 21a-279. The defendant properly filed this request to charge prior to closing arguments; Practice Book § 852; and took an exception when the charge was not given.

In *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), this court determined that a lesser included offense instruction should be given when: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser."

The first three requirements of *Whistnant* have been clearly satisfied in this case. As noted, the defendant filed a timely request for an instruction on the crime of simple possession. Further, the defendant could not have distributed cocaine with the intent to sell, in the manner described in the state's pleadings, without first having possessed the cocaine. Finally, the evidence introduced at trial satisfies the third requirement of *Whistnant* that there be some evidence which would justify conviction on the lesser charge of possession. We disagree with the defendant's claim, however, that the fourth requirement of this test has been met.

The defendant was charged with transporting and distributing cocaine to Violano, with the intent that it be sold to Crawford who was working in an undercover capacity. The difference between that crime and the crime of possession of narcotics, reduced to its essentials, lies in the element of an intent to sell. The fourth

prong of *Whistnant* requires that the proof of the element of intent to sell be sufficiently in dispute to permit the jury consistently to find the defendant not guilty of the greater offense but guilty of the lesser. In this case, the defendant did not present any witnesses or offer any evidence from which the jury might have found that he merely possessed cocaine without the further intent that it be sold to Crawford. On the contrary, the defendant by his plea of not guilty denied each and every allegation against him contained in the information and bill of particulars. Included in this denial were both the allegation that he intended to sell cocaine and the allegation, implicit in the charging documents, that he possessed cocaine in the course of his transporting and delivering it to Violano.

Nor did the state introduce evidence from which the jury might consistently have found the defendant not guilty of possession with intent to sell, but guilty of simple possession. On the facts of this case, it is inconceivable that the jury might credit the state's evidence relating to the defendant's possession of cocaine without crediting that same evidence as it related to the defendant's intent to sell the cocaine in his possession. The state's presentation of evidence at trial leads ineluctably to the conclusion that the defendant, if involved at all, was involved in the distribution of cocaine with the intent to sell, and not as a mere possessor. The element of intent to sell, which differentiates the greater from the lesser offense, was not sufficiently in dispute so as to entitle the defendant to the requested instruction on possession. We find that the trial court did not err • n refusing to charge on the lesser included offense of possession of a narcotic substance.

## III

The defendant claims that the trial court erred in admitting the out-of-court statements of Violano, who

did not testify at the defendant's trial, under the co-conspirator exception to the hearsay rule. In the fourth count of the information, the defendant was charged with conspiracy to sell cocaine, in violation of General Statutes §§ 21a-277 (a) and 53a-48 (a). In his twofold claim of error the defendant challenges the sufficiency of both the evidentiary and constitutional foundations necessary for the admission of a nontestifying co-conspirator's statements. The issues raised under this claim of error present matters of first impression to this court.[3] The evidentiary and constitutional limitations on the co-conspirator exception to the hearsay rule are, however, frequently litigated in the federal courts. We find the federal case law instructive and will therefore use it as an aid in deciding the issues before us.

We first address the defendant's contention that "there was insufficient independent evidence to establish either the existence of the conspiracy or that both Violano and Vessichio participated in such a conspiracy." The United States Court of Appeals for the Second Circuit has articulated standards to permit introduction of statements under the co-conspirator rationale. Before such statements may be admitted, the trial judge must make a preliminary determination that there is sufficient independent evidence to establish the following: "(1) that a conspiracy existed, *United States* v. *Nixon,* 418 U.S. 683, 701 n.14, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974); (2) that the conspiracy was still in existence at the time the statement was made, *United States* v. *DeVaugn,* 579 F.2d 225, 227–28 (2d Cir. 1978); citing *Krulewitch* v. *United States,* 336 U.S. 440, 69 S. Ct. 716, 93 L. Ed. 790 (1949); (3) that the declarations were made in furtherance of the con-

---

[3] This court has considered the co-conspirator's exception to the hearsay rule, though it has never addressed it as a constitutional claim. See *State* v. *Tropiano,* 158 Conn. 412, 423, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970); *Cowles* v. *Coe,* 21 Conn. 220, 234 (1851).

spiracy, *United States* v. *Lang,* 589 F.2d 92, 99 (2d Cir. 1978); and (4) that both the declarant and the defendant participated in the conspiracy, *United States* v. *Cafaro,* 455 F.2d 323, 326 (2d Cir.), *cert. denied,* 406 U.S. 918, 92 S. Ct. 1769, 32 L. Ed. 2d 117 (1972); *United States* v. *Calabro,* 449 F.2d 885, 889 (2d Cir. 1971), *cert. denied,* 405 U.S. 928, 92 S. Ct. 978, 30 L. Ed. 2d 801 (1972)." *United States* v. *Lyles,* 593 F.2d 182, 194 (2d Cir.), cert. denied, 440 U.S. 972, 99 S. Ct. 1537, 59 L. Ed. 2d 789 (1979); *State* v. *Tropiano,* 158 Conn. 412, 421–24, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970); see also 1 Weinstein, Evidence (1982) § 104 [05]; Fed. R. Evid. 801 (d) (2) (E). The court must make its preliminary determination by a "fair preponderance of the evidence independent of the hearsay utterances"; *United States* v. *Geaney,* 417 F.2d 1116, 1120 (2d Cir. 1969), cert. denied sub nom. *Lynch* v. *United States,* 397 U.S. 1028, 90 S. Ct. 1276, 25 L. Ed. 2d 539 (1970); a standard which is lower than the standard of evidence required to submit a charge of conspiracy to the jury. Id., 1119–20; *United States* v. *Ragland,* 375 F.2d 471, 477 (2d Cir. 1967), cert. denied, 390 U.S. 925, 88 S. Ct. 860, 19 L. Ed. 2d 987 (1968). "Once the 'threshold requirement for admissibility is satisfied by a showing of a likelihood of an illicit association between the declarant and the defendant,' *United States* v. *Ragland,* [supra, 477], the conspirators' statements are admissible and they 'might tip the scale' in favor of the defendant's guilt, *United States* v. *Geaney,* supra, [1120]." *United States* v. *Alvarez-Porras,* 643 F.2d 54, 57 (2d Cir. 1981).

The question before us differs from the usual determination of whether the evidence at trial is sufficient to sustain the jury's verdict. Our present analysis is limited to a review of the evidence, excluding Violano's statements, only in terms of its sufficiency to sustain

the trial court's preliminary determination, by a preponderance of the evidence, that Violano and the defendant were participating in a conspiracy when these statements were made. While this standard of evidentiary review is less exacting, we must nevertheless examine the evidence to be satisfied that the standard has been met.

To establish the crime of conspiracy under § 53a-48 of the General Statutes, the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. *State* v. *DeMatteo,* 186 Conn. 696, 707, 443 A.2d 915 (1982). "The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are 'knowingly engaged in a mutual plan to do a forbidden act.' *State* v. *Holmes,* 160 Conn. 140, 149, 274 A.2d 153 [1970]. A conviction of the crime of conspiracy can be based on circumstantial evidence, for conspiracies, by their very nature, are formed in secret and only rarely can be proved otherwise than by circumstantial evidence. *State* v. *Holmes,* supra, 150." *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975); *State* v. *Hayes,* 127 Conn. 543, 554, 18 A.2d 895 (1941). The evidence will be construed in a way most favorable to sustaining the preliminary determinations of the trial court; its conclusions will not be disturbed on appeal unless found to be clearly erroneous. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

Measured against these standards, the defendant's challenge to the evidentiary foundation necessary for the admission of Violano's statements must fail. Crawford testified that on five separate occasions he purchased relatively large amounts of cocaine from Violano. On three of those occasions he handed the pur-

chase money to Violano, and then watched Violano take the money to the defendant's vehicle and return with the cocaine ordered. On one occasion Crawford actually witnessed the exchange being made. Nobile testified that before Crawford arrived to meet Violano, the defendant would make a preliminary appearance at Violano's residence. On one occasion, when the cocaine was delivered by Claude Vergutto, the defendant cruised slowly through the neighborhood in his van. When the transaction was completed and Crawford departed, the defendant drove to Violano's house and picked up Violano and Vergutto.

While this evidence is not overwhelming, we believe that it is sufficient to sustain the trial court's preliminary finding, by a preponderance of the evidence, that Violano and the defendant were involved in a conspiracy to sell cocaine. The trial court did not err in finding the evidence of participation sufficient to allow the admission of Violano's statements.

The defendant also claims that the admission of Violano's statements violated his right to confrontation under the sixth amendment to the United States constitution. Relying on *Ohio* v. *Roberts,* 448 U.S. 56, 65, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), the defendant argues that the state was required "either [to] produce, or [to] demonstrate the unavailability" of Violano before his out-of-court statements could be admitted into evidence. The state concedes that it gave no reason at trial for its failure to call Violano as a witness.

In *Ohio* v. *Roberts,* supra, the United States Supreme Court established a two-pronged test to determine whether admission of an out-of-court statement violates the confrontation clause. The first prong looks to the necessity of admitting the statement by examining whether the hearsay declarant is unavailable to testify. The second prong looks to the reliability of the state-

ment. "In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' " Id., 66.

The *Roberts* case, however, does not deal with a co-conspirator's statement, but with a witness' prior testimony that had been given at a preliminary hearing. Thus, despite the broad confrontation language used in *Roberts,* the Federal Circuit Courts of Appeal remain divided on the question whether *Roberts* has modified the holding in *Dutton* v. *Evans,* 400 U.S. 74, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970). In *Dutton,* the United States Supreme Court rejected a constitutional challenge based upon the admission of a co-conspirator's statement despite the absence of any showing that the out-of-court declarant was unavailable. While some courts conclude that *Roberts* has modified the traditional co-conspirator rule; see, e.g., *United States* v. *Caputo,* 758 F.2d 944 (3d Cir. 1985); *United States* v. *Ordonez,* 737 F.2d 793 (9th Cir. 1984); others continue to hold that the only test for admissibility of a conspirator's out-of-court statement is whether the statement complies with rule 801 (d) (2) (E) of the Federal Rules of Evidence. E.g., *United States* v. *Williams,* 737 F.2d 594, 610 (7th Cir. 1984), cert. denied, 470 U.S. 1003, 105 S. Ct. 1354, 84 L. Ed. 2d 377 (1985).

We conclude that a defendant's right of confrontation is not violated despite the absence of the out-of-court declarant if the statement "bears sufficient indicia of reliability to assure the trier of fact an adequate basis for evaluating the truth of the declaration . . . ." *United States* v. *Puco,* 476 F.2d 1099, 1107 (2d Cir.) (on petition for rehearing), cert. denied, 414 U.S. 844, 94 S. Ct. 106, 38 L. Ed. 2d 82 (1973); accord *United States* v. *Pagan,* 721 F.2d 24, 31 (2d Cir. 1983); *United States* v. *Perez,* 702 F.2d 33, 37 (2d Cir.), cert. denied, 962 U.S. 1108, 103 S. Ct. 2457, 77 L. Ed. 2d 1336

(1983); cf. *State* v. *King,* 187 Conn. 292, 315, 445 A.2d 901 (1982). Factors relevant to a determination of reliability include: "(1) whether the context of the statements and the persons to whom they were made suggest that they were reliable; (2) whether the declarant had a motive for lying or problems with his or her memory, perception or expression; and (3) whether the declarant had personal knowledge of the identity and role of the participants in the crime." *United States* v. *Massa,* 740 F.2d 629, 639 (8th Cir. 1984); *United States* v. *Ordonez,* supra, 802–803. In the present case, Violano, the declarant, allegedly told Crawford that his source was a childhood friend, and described him as a "fat slob." Nobile testified that the defendant was a "heavy set" individual. When Violano and Crawford were parked at the corner of Glen Haven and Norwood Avenues, Violano stated that his source lived around the corner and, in fact, proceeded to and from his source's location in a matter of minutes. Police determined that the defendant resided at 145 Glen Haven Avenue. Further, Violano variously identified his source as "Ant" or "Anthony," and his movements from his house to the defendant's automobile, where the exchanges of money for cocaine allegedly took place, were monitored by both Crawford and Nobile. On one occasion Violano informed Crawford that a courier would deliver the cocaine because the defendant was suspicious and wanted to drive around the neighborhood checking for police. Violano's statements proved accurate when Claude Vergutto arrived with the delivery, and Nobile observed the defendant driving through the neighborhood.

In addition to their factual accuracy, the statements themselves were of a nature which indicates their probable reliability. Violano spoke from personal knowledge, and his statements were neither odd, farfetched, nor inconsistent with the events observed by Crawford and

Nobile. Further, Violano had no reason or motive to lie to Crawford. If he had suspected that Crawford was an officer he would not have continued to sell cocaine to him. And finally, Violano's statements were not self-serving, which might cast doubt on their reliability. If anything, his statements were against his penal interest. Courts have traditionally found statements against penal interest to carry their own indicia of reliability. *United States* v. *Pagan,* supra; *United States* v. *Perez,* supra; see *United States* v. *Harris,* 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971). In an analogous situation, we have applied this principle "to find adequate verification of the reliability of an informant's naming of other participants in a crime where at least some significant details of his account of the crime itself have been corroborated independently, as in this case." *State* v. *Daley,* 189 Conn. 717, 722, 458 A.2d 1147 (1983); *State* v. *Just,* 185 Conn. 339, 360–69, 441 A.2d 98 (1981); *State* v. *Ferguson,* 185 Conn. 104, 114–15, 440 A.2d 841 (1981). The admission of these statements did not violate the defendant's sixth amendment right of confrontation. See *State* v. *King,* supra, 314–15.

IV

The defendant next claims that the trial court erred in denying his motion to strike the testimony of Crawford and Nobile, whose field notes had intentionally been destroyed. Crawford conceded that the original notes of his transactions with Violano had been destroyed, and that the first time he ever reduced Violano's alleged statements to writing was several weeks before trial, some eighteen months after the transactions with Violano had been concluded. The handwritten notes of Nobile were similarly destroyed.

We have previously held that the rough field notes of an investigating officer who testifies may qualify as a "statement of the witness" subject to production under Practice Book § 752. *State* v. *Hinton,* 196 Conn.

289, 300, 493 A.2d 836 (1985); *State* v. *Anonymous (83-FG),* 190 Conn. 715, 733, 463 A.2d 533 (1983). We have further held that the routine destruction of statements that would otherwise be subject to disclosure under Practice Book § 752 cannot excuse their nondisclosure. *State* v. *Myers,* 193 Conn. 457, 467-70, 479 A.2d 199 (1984). Although we strongly disapprove of the routine destruction of discoverable material, we have only recently begun to consider the severe sanction of remand and retrial without permitting the testimony of the police witness whose notes have intentionally been destroyed. *State* v. *Myers,* supra; see *United States* v. *Bufalino,* 576 F.2d 446, 448-50 (2d Cir.), cert. denied, 439 U.S. 928, 99 S. Ct. 314, 58 L. Ed. 2d 321 (1978). As a practical matter, however, we recognize that, in general, the routine practices which we condemn were employed in the investigation of cases tried prior to the heightened concern expressed in our recent decisions. See, e.g., *State* v. *Milum,* 197 Conn. 602, 614-18, 500 A.2d 555 (1985); *State* v. *Myers,* supra.

Therefore, we continue to employ a balancing test in determining whether a witness' testimony must be suppressed when his written statements, otherwise discoverable under Practice Book §§ 748 through 755, have intentionally been destroyed. " 'Whether or not sanctions for nondisclosure should be imposed depends in large measure upon the extent of the Government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other.' " *State* v. *Shaw,* 185 Conn. 372, 386, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982), quoting *United States* v. *Miranda,* 526 F.2d 1319, 1324 (2d Cir. 1975), cert. denied, 429 U.S. 821, 97 S. Ct. 69, 50 L. Ed. 2d 82 (1976). "Since access to the statements of witnesses for the prosecuting authority is not a constitutional

right; *United States* v. *Augenblick,* 393 U.S. 348, 356, 89 S. Ct. 528, 21 L. Ed. 2d 537 (1969), on remand, 509 F.2d 1157 (Ct. Cl.), cert. denied, 422 U.S. 1007, 95 S. Ct. 2628, 45 L. Ed. 2d 669 (1975); *State* v. *Pikul,* 150 Conn. 195, 202, 187 A.2d 442 (1962); the burden of showing prejudice rests on the defense. *State* v. *Anonymous (83–FG),* 190 Conn. 715, 735, 463 A.2d 533 (1983); *State* v. *Gonzales,* 186 Conn. 426, 436 n.8, 441 A.2d 852 (1982); *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980); see also *California* v. *Trombetta,* 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)." *State* v. *Myers,* supra, 469 n.7.

In the present case we cannot agree that the defendant suffered prejudice through his inability to inspect the handwritten notes of Crawford and Nobile. The defendant suggests that Crawford testified untruthfully to the statements allegedly made to him by Violano. He contends that, had these statements in fact been made, Crawford would have included them in his original handwritten notes. Since Crawford's notes were intentionally destroyed, the defendant claims that he has been prejudiced by his inability to compare these notes to Crawford's in-court testimony.

Crawford testified that he did not take contemporaneous notes of the actual transactions with Violano. He prepared rough notes sometime after the transactions occurred, although he could not recall the precise time. After the last transaction was completed, on January 10, 1980, Crawford gave his handwritten notes to his secretary, who prepared a typewritten copy, which was signed by Crawford on January 24, 1980. The handwritten originals were thereafter destroyed.

The January 24, 1980 typewritten report did not mention the statements allegedly made by Violano to Crawford. From this it was fairly inferrable that the originals also failed to contain the alleged statements. This point was not lost on trial counsel, who, during

cross-examination of Crawford, did an admirable job of exposing this omission to the jury. The same is true with respect to Violano's alleged offer, made during the January 10, 1980 transaction, to introduce Crawford to his source; and to Crawford's claim that he saw, during the November 27, 1979 transaction, a hand-to-hand exchange between Violano and the defendant. Neither of these events are included in Crawford's January 24, 1980 report. Further, Nobile testified that he could not recall Crawford having reported these events orally to him when they allegedly occurred.

Crawford was cross-examined extensively on these matters. He never claimed that he included these events and statements in his original handwritten notes. Nor did he claim to have reported to Nobile all that happened during his meetings with Violano. The defendant argued at trial that Crawford would naturally and necessarily have included in his field notes such important statements and events had they in fact occurred. The effect of this argument was not significantly lessened when the defendant was given a typewritten report which, according to Crawford, was a verbatim copy of his original handwritten notes. Crawford virtually conceded that his original notes contained no account of the statements and events to which he testified. These omissions were no less conspicuous, and no less damaging to his credibility, when found in his later, typewritten report. The jury had adequate grounds to disbelieve Crawford's testimony. That it chose not to do so was well within its province. We find that the trial court did not err in refusing to strike the testimony of Crawford and Nobile.

## V

The defendant's final claim is that the trial court erred in admitting evidence of the defendant's subsequent conviction for the sale of marihuana. The state offered evidence that on May 6, 1980, some four

months after the last transaction between Crawford and Violano, a marihuana sale involving the defendant took place in the parking lot of the Mine-Cine, a cinema house located directly across the street from the Soffer's Barn restaurant. Nobile, working undercover, first met with George Mauro in the cinema parking lot and arranged to purchase twenty pounds of marihuana for $10,000. Mauro then drove to 145 Glen Haven Avenue and parked his vehicle behind the defendant's gray van. In a short while Mauro returned to the cinema parking lot with the marihuana, followed by the defendant, who parked his van approximately thirty feet away. Both Mauro and the defendant were arrested when Nobile determined that the marihuana was in Mauro's car, but before the actual exchange took place. The defendant subsequently pleaded guilty to the charge of sale of marihuana.

Evidence of other crimes "is admissible to prove intent, an element of the crime, identity, or a system of criminal activity if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency. *State* v. *Barlow,* 177 Conn. 391, 393–94, 418 A.2d 46 (1979). When subjected to appellate review, every reasonable presumption should be given in favor of the trial court's ruling. Id. Only where it appears that either the trial court abused its discretion or an injustice has been done will this court find reversible error on the basis of this sort of evidentiary ruling. *State* v. *Brown,* 169 Conn. 692, 702, 364 A.2d 186 (1975)." *State* v. *Ryan,* 182 Conn. 335, 337, 438 A.2d 107 (1980); see also *State* v. *Braman,* 191 Conn. 670, 676–77, 469 A.2d 760 (1983).

In its offer of proof, the state claimed that the evidence of the subsequent marihuana sale was admissible to show that the defendant's presence at the scene of the cocaine transactions between Crawford and Violano was not coincidental. The defendant's coun-

sel, at various junctures in the trial, argued that the defendant's mere presence near these transactions was insufficient to establish his involvement in the illegal activity. This claim was most prominent in connection with the conspiracy charge, as previously discussed. He further asserted, before the jury, his intent "to establish that Mr. Violano was using Mr. Vessichio as a decoy" in order to distract attention from himself, mainly for protection. He argued to the jury that "[r]ip off is the name of the game in this whole drug transaction. So, what kind of insurance policy do you use. You use diversionary tactics. You make it look like somebody's delivering the stuff to you . . . ." The defense theory throughout trial was that either Violano or Vergutto, the defendant's courier, was the actual ringleader.

There is no question that, under these circumstances, the evidence of the subsequent marihuana sale was admissible as it showed that the defendant had intentionally engaged in a system of criminal activity. The sale was negotiated directly across the street from the Soffer's Barn restaurant, where Crawford began his transactions with Violano. As before, the undercover narcotics agent conducted business with an intermediary of the defendant. Finally, the defendant, while avoiding a face to face encounter with the undercover buyer, stationed himself nearby in his vehicle at the time and place that the transaction was to occur. The trial court did not abuse its discretion in admitting this evidence on the issue of the defendant's knowing participation in the crimes with which he was charged. *State* v. *Ryan,* supra; *State* v. *Amaral,* 179 Conn. 239, 244–45, 425 A.2d 1293 (1979).

There is no error.

In this opinion the other judges concurred.