STATE OF CONNECTICUT *v.* STEVEN SEWELL
(AC 26287)

DiPentima, Gruendel and Dupont, Js.

Argued January 17—officially released June 6, 2006

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Proloy K. Das*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio N. Vitale*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. In this appeal following a jury trial, the defendant, Steven Sewell, challenges the denial of two motions for a mistrial, claiming that the state's failure to disclose two witnesses in accordance with our rules of practice deprived him of a fair trial. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 23, 2001, the victim, Timothy Sweat, was in the apartment he shared with his mother and brother in New Haven. The victim sold beer, cigarettes, soda and chips from his apartment to patrons he knew. At approximately 6:30 p.m. that day, Sweat responded to a knock at his door by looking through the peephole. When he recognized Judale Wynkoop, who is also known as Dell, to whom he had sold beer previously, Sweat opened the door. As the two men stood in the doorway speaking, the defendant emerged from a hallway outside the apartment, holding a black pistol. As the defendant approached, Wynkoop stepped away, Sweat raised his hands, and the defendant shot him through the thumb and into his chest at close range. Sweat tried, without success, to grab the defendant's face and throat and then backed into the apartment. The defendant ran down the street.

Prior to trial, the defendant filed a written request for disclosure under Practice Book §§ 40-11, 40-12 and 40-13.[1] In its response to that request, the state did not list either Angel Ogman or Darryl Wilson as witnesses or turn over to the defendant any statements attributed to these individuals.

At trial, the state called a number of witnesses, including Sweat, Ogman, who is also known as Yummy, Quintares McArthur, a patrol officer in the New Haven police department, Edwin Rodriguez, a detective in the New Haven police department, and Wilson, who is also known as D-Woo.

During the first day of evidence, the defendant moved for a mistrial because of the state's late disclosure of Wilson as a witness. That motion was denied. After

---

[1] The court does not include a copy of the request filed by the defendant, but it is clear from other filings that such a request was made. See Practice Book § 40-7.

Ogman testified later on that same day, the defendant moved for a mistrial on the basis of her testimony. That motion also was denied. At the close of trial, the jury found the defendant guilty of assault in the first degree in violation of General Statutes § 53a-59 (a) (5), conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (5), and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c. Immediately after the jury returned its verdict, the defendant stipulated to having committed a class A, B or C felony with a firearm in violation of General Statutes § 53-202k. The court imposed a total effective sentence of twenty-five years imprisonment. This appeal followed.

We first set forth our standard of review for the court's denial of the defendant's motions for a mistrial. "[T]he principles that govern our review of a trial court's ruling on a motion for a mistrial are well established. Appellate review of a trial court's decision granting or denying a motion for a [mistrial] must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a [mistrial] is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In [its] review of the denial of a motion for mistrial, [our Supreme Court has] recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Henry*, 72 Conn. App. 640, 672, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002).

Additionally, "Practice Book § 40-5 gives broad discretion to the trial judge to fashion an appropriate rem-

edy for non-compliance with discovery. . . . Generally, [t]he primary purpose of a sanction for violation of a discovery order is to ensure that the defendant's rights are protected, not to exact punishment on the state for its allegedly improper conduct. As we have indicated, the formulation of an appropriate sanction is a matter within the sound discretion of the trial court. . . . In determining what sanction is appropriate for failure to comply with court ordered discovery, the trial court should consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 186, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

I

The defendant first claims that the court improperly denied his motion for a mistrial related to Ogman's testimony and that his constitutional rights to confrontation and due process were violated because the state failed both to disclose Ogman as a witness in accordance with Practice Book § 40-13 and to provide any materials regarding the content of her testimony.[2] We disagree.

When jury selection began, the state listed Ogman as a potential witness, and the defendant did not object. The record also indicates that defense counsel knew of Ogman as a potential witness at least eight months

---

[2] As an initial matter, the defendant's motion for a mistrial clearly indicates that its basis was his surprise as to the *content* of Ogman's testimony. The defendant at no point objected to the state's *use* of Ogman *as a witness*. The focus of the defendant's argument on appeal and, consequently, our review of this issue, rests on the state's failure to provide any materials regarding the content of Ogman's testimony, rather than on the state's failure to disclose Ogman as a witness.

prior to trial. It was only *after* Ogman testified on direct examination that defense counsel moved for a mistrial.

On direct examination, Ogman testified that she was acquainted with the defendant, the victim and Wynkoop, and that on the day of the incident she had been in and out of the victim's apartment, buying beer. She saw the defendant in the vicinity of the victim's apartment minutes prior to the shooting and, immediately after hearing a gunshot, she ran into the victim's apartment. She further testified that when she approached the victim, he told her, "Steve shot me." Ogman also stated that a couple of days after the shooting, she spoke with the defendant. He asked her about the victim and told her that the gun should not have fired because he believed the safety was in place. He also told her that he had an alibi involving his mother. She then testified that she never told the police about her conversation with the defendant after the shooting because she feared being labeled a "snitch."

Both McArthur and Rodriguez testified that when Ogman spoke with them about the shooting of the victim, she refused to give either of them a statement. Citing concern for her safety should her name be disclosed in a public record, neither police officer included Ogman in any filed report.

Before beginning his cross-examination of Ogman, defense counsel made an oral motion for a mistrial, stating: "I would just make another motion for mistrial. I mean, this is certainly undue surprise. You know, all this extra—extra stuff. There's no reports, nothing, no memorandum whatsoever, nothing saying what she's going to say. I'm standing here, I'm like, you know, I don't know if the court noticed my jaw practically hit the table."

In denying the defendant's motion for a mistrial related to Ogman's testimony, the court stated: "There's

no basis for a mistrial here. At best, there is a witness that the state didn't even know was going to say until the end. I have granted you a continuance to deal with that, and if you need additional time, we'll deal with that as the need arises, but there's no indication of anything improper that has been done, your pronouncements—conclusions to the contrary, and the motion is denied."

The court did not abuse its discretion by denying the defendant's motion for a mistrial on the basis of the state's failure to provide materials regarding the substance of Ogman's testimony. The court ordered a one day continuance and indicated that it would allow defense counsel more time if requested. The next day, defense counsel did not make any request for additional time. "While the remedy of a mistrial is permitted under the rules of practice, it is not favored. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been denied the opportunity for a fair trial. . . . The trial court enjoys wide discretion in deciding whether a mistrial is warranted . . . ." (Internal quotation marks omitted.) *State* v. *Fasano*, 88 Conn. App. 17, 43, 868 A.2d 79, cert. denied, 274 Conn. 904, 876 A.2d 15 (2005), cert. denied, 546 U.S. 1101, 126 S. Ct. 1037, 163 L. Ed. 2d 873 (2006). In this case, the continuance the court granted was a curative action offered to remedy any then existing prejudice to the defendant. The defendant has not shown that he suffered any prejudice as a result of the court's grant of a continuance and denial of the motion for a mistrial related to Ogman's testimony.

Additionally, the state's failure to provide any materials regarding the content of Ogman's testimony did not implicate any of the defendant's constitutional rights.

The defendant argues that he has a constitutional right to materials relating to Ogman and her testimony. Specifically, he argues that the police officers who interviewed Ogman should have created a record of her statements so that the prosecutor could disclose her statements in turn to the defendant.

Although the defendant argues to the contrary, the police do not have an obligation to create witness statements. "The law is clear that, absent bad faith, there is no affirmative obligation on the part of the government to take notes. . . . There may well be many reasons why the government would not take notes—witness security issues, the rapid pace of the investigation, the difficulty of separating out evaluative comments from admissible evidence." *United States* v. *Houlihan*, 937 F. Sup. 65, 68–69 (D. Mass. 1996); see also *Campbell* v. *United States*, 296 F.2d 527, 531 (1961), on appeal after remand, 303 F.2d 747 (1st Cir. 1962), vacated on other grounds, 373 U.S. 487, 83 S. Ct. 1356, 10 L. Ed. 2d 501 (1963); *United States* v. *Lieberman*, 608 F.2d 889, 897 (1st Cir. 1979), cert. denied, 444 U.S. 1019, 100 S. Ct. 673, 62 L. Ed. 2d 649 (1980). The police officers testified that their failure to document a statement for Ogman was out of concern for her safety. Although there was testimony that they did not follow procedure, there is nothing in the record to suggest that they acted in bad faith.

Furthermore, the defendant's procedural right to disclosure of inculpatory materials under our rules of practice does not give rise in and of itself to a constitutional right.[3] Disclosure of witness statements is required by Practice Book § 40-13. "The right under the rules of practice to statements of witnesses . . . is not a right

---

[3] If, however, the statement contained exculpatory material, a constitutional deprivation under *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), might arise.

of constitutional magnitude. *United States* v. *Augenblick*, 393 U.S. 348, 356, 89 S. Ct. 528, 533, 21 L. Ed. 2d 537 (1969), on remand, 509 F.2d 1157 [Ct. Cl.], cert. denied, 422 U.S. 1007, 95 S. Ct. 2628, 45 L. Ed. 2d 669 (1975); *State* v. *Vessichio*, 197 Conn. 644, 661–62, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). The defendant therefore bears the burden of showing prejudice." *State* v. *Coriano*, 12 Conn. App. 196, 200, 530 A.2d 197, cert. denied, 205 Conn. 810, 532 A.2d 77 (1987); see also *State* v. *Meyers*, 193 Conn. 457, 479 A.2d 199 (1984).

In the present case, the defendant has not met this burden of proving prejudice or a denial of due process. The state disclosed its interest in Ogman as early as May, 2002. Testimony at trial indicated that the defendant was well acquainted with Ogman. The defendant knew Ogman by her nickname, Yummy, Ogman was familiar with the defendant's girlfriend, and the defendant lived next door to Ogman in the same apartment building. Additionally, the state disclosed Ogman's full name during jury selection and before trial. The defendant had time to interview Ogman and to prepare his cross-examination before she testified. Finally, the court allowed the defendant additional time to prepare his cross-examination by way of granting a continuance. The court further indicated that it would allow the defendant more time if he made such a request. Under these circumstances, we conclude that the state's failure to provide any materials or information regarding Ogman's testimony did not rise to the level of a denial of the defendant's right of confrontation or due process right to a fair trial.

II

The defendant next claims that the court improperly denied his motion for a mistrial as to the late disclosure of Wilson, whom, he alleges, was considered a suspect.

The defendant claims that the late disclosure of this exculpatory evidence violated his right to a fair trial. We disagree.

Wilson was present outside of Sweat's apartment building on the day of the shooting, and he testified that he did not cooperate with the police after the shooting. Several months following the shooting, after discussing his knowledge of the shooting with his mother, Wilson decided to talk with the police. Rodriguez testified that he met with Wilson the day before evidence began and told him that there were "rumors out there saying that he was possibly involved with the shooting and . . . if [the rumors] ever came up . . . [the police] probably could go after him." Wilson then provided a statement to the police. The prosecutor disclosed Wilson as a witness and provided his statement to the defendant the next day. The defendant made a motion for a mistrial. The court denied that motion, but granted a continuance, stating: "I will allow you any additional time you need to discuss the matter with [the defendant]. I will consider any motion addressed to that witness' testimony before he testifies. Also, you have the remedy of examining the police as to the reason for his emergence at this point. You may pretry the case again, if you wish, upstairs. You may have additional time to prepare a defense, to talk to Mr. Wilson. . . . But for all these reasons I do not see a sufficient basis upon which to declare a mistrial."

The defendant's right to a fair trial was not violated by the state's failure to disclose that Wilson was a suspect. The record does not support the defendant's contention that the police seriously considered Wilson a possible suspect. Rodriguez' statement to Wilson regarding rumors of his involvement on the day before evidence began does not rise to the level of exculpatory materials to which the defendant would be entitled under *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct.

1194, 10 L. Ed. 2d 215 (1963). Moreover, Wilson's testimony was clearly inculpatory of the defendant.

Even if Wilson's existence as a witness or possible suspect were exculpatory, his existence was not suppressed.[4] The state disclosed his name and statement to the defendant on February 24, 2003, the day after the state became aware that Wilson had provided a statement to the police. "Evidence is not suppressed within the meaning of *Brady*, however, if it is disclosed at trial . . . . In such a situation, the defendant must demonstrate that the timing of the disclosure prejudiced him to the extent that he was deprived of a fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Stinson*, 33 Conn. App. 116, 120, 633 A.2d 728 (1993).

The defendant is unable to demonstrate, in accordance with *Stinson*, that he was prejudiced by the timing of the state's disclosure of Wilson as a witness. The court not only granted the defendant a continuance to prepare for his cross-examination of Wilson, but also stated that it would entertain any other motions made by the defendant with regard to Wilson's testimony. Under Practice Book § 40-5, if the prosecution fails to comply with disclosure, the defendant can request that

---

[4] The defendant relies on *State* v. *Gunning*, 183 Conn. 299, 439 A.2d 339 (1981), to support his proposition that the state's explanation for its late disclosure was "totally unsatisfactory." The *Gunning* court stated in dicta that both the sixteen month delay by the police in notifying the prosecution and the prosecution's five day delay in notifying the defendant were inappropriate. Id., 306–307. In the present case, the police did not procure a statement from Wilson until the day before evidence began, and there is nothing in the record to suggest that the police could have obtained the statement in a more timely manner. On the same day that the police officers procured the statement from Wilson, they also informed the prosecutor that Wilson was providing a statement about the incident to them. The next morning, the prosecutor told the defendant about Wilson and his statement. Unlike the facts present in *Gunning*, there simply is nothing in the record to suggest that the timing of the disclosure in this case was in any way attributable to the state's action or inaction, either by the prosecutor or the police.

the court make an appropriate order, including granting a continuance, relieving the defendant from making a disclosure required by the rules and prohibiting the prosecution from introducing the specified evidence, including the entirety of the proffered witness' testimony. The defendant, however, requested only the most extreme of remedies—a mistrial. See *State* v. *Fasano*, supra, 88 Conn. App. 43. Not having pursued other viable remedies, including suppression of the witness' statement, or arguing that such a remedy would not have protected his rights sufficiently, the defendant is unable to show that he suffered prejudice because the court denied his motion for a mistrial related to the state's disclosure of Wilson and instead granted the defendant a continuance.

The judgment is affirmed.

In this opinion the other judges concurred.