# STATE OF CONNECTICUT *v.* KENNETH REILLY
## (AC 33870)

Gruendel, Robinson and Schaller, Js.

Argued October 12, 2012—officially released March 26, 2013

*Matthew K. DiVito*, with whom, on the brief, was *Martin J. Minnella*, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Catherine Brannelly Austin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Kenneth Reilly, appeals from the judgment of conviction, rendered after a jury trial, of three counts of risk of injury to, or impairing the morals of, a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that the trial court improperly denied his motion for a mistrial. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. Prior to his trial, the defendant filed a motion to suppress

statements that he had given to Waterbury police officers on the grounds that such statements were obtained in violation of his *Miranda*[1] rights and consisted of a confession obtained involuntarily. During the defendant's suppression hearing, Ruda Pratt, a Waterbury police detective, testified that she was assigned to investigate allegations of sexual assault involving the defendant. The defendant agreed to meet with Pratt and arrived at the police department around 10 a.m. on July 19, 2007. After entering the interview room, Pratt read the defendant a form to waive his *Miranda* rights, and the defendant agreed to waive his rights.

Pratt further testified that she generated a typed statement contemporaneously with the defendant's disclosure of the incident, in which the defendant admitted in detail that he had touched the minor victim inappropriately. After Pratt completed the defendant's statement, the defendant reviewed it and agreed that it was correct. Michael Ponzillo, a Waterbury police sergeant, testified that he then entered the interview room. Ponzillo stated that he verified that the defendant's statement was accurate, asked the defendant to initial and sign the statement, and notarized the statement after the defendant signed it. The defendant's printed statement listed a start time of 11:10 a.m., which was automatically generated by the computer when the program was initiated. The statement also listed an end time of 11:12 a.m., which was manually entered by the officer completing the form. Pratt stated that the interview lasted approximately forty minutes, and explained that the end time on the statement indicating that the interview lasted only two minutes was the result of a typographical error.

During the suppression hearing, the defendant testified to the contrary. The defendant denied waiving his

---

[1] *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*Miranda* rights and specifically stated that he was not given a form to do so. The defendant also denied admitting to any of the allegations contained in the printed statement and testified that Pratt did not type his statement contemporaneously with his disclosures. Instead, Pratt asked the defendant a series of questions, prepared a handwritten statement and then threw that statement away. According to the defendant, Pratt then typed a statement and threatened him with incarceration should he fail to sign it. The defendant testified that after he left the station, Pratt and another officer came to his home and asked him to sign a second statement because the first statement was incomplete. The defendant's mother corroborated this portion of his testimony. Pratt denied returning to the defendant's home, and Ponzillo denied having any knowledge of such an occurrence.

The court denied the defendant's motion to suppress. In so holding, the court found the officers' testimony more credible than the defendant's, noting specifically that it found "[t]he defendant's testimony . . . incredulous."[2] In crediting the officers' testimony over the defendant's, the court concluded that "[the] defendant was not in custody at the time of his statement. . . . He was never restrained during the interview, threatened, harmed or denied any necessity or any request during the interview. And critically important, he left the interview after it ended proving that he was, in fact, free to go. . . . Therefore, it was not necessary for the police

---

[2] In making this finding, the court concluded that the defendant's testimony was wholly unbelievable in the following respects: (1) Pratt did not advise the defendant of his rights prior to his statement; (2) Pratt took notes and threw them away; (3) Pratt wrote a false confession and the defendant did not give a detailed account of the incident; (4) Pratt threatened the defendant with incarceration until he signed the statement; (5) Pratt refused the defendant's request for counsel; (6) the defendant did not initial his statement; (7) Ponzillo did not enter the room after the interview; and (8) the defendant did not read his statement.

to advise the defendant of his *Miranda* rights. . . . [A]s an alternative basis for denying this suppression motion . . . [the court concluded] that there was a valid waiver of [the defendant's] *Miranda* rights" because the defendant was of sufficient age and intelligence to understand the nature of his waiver, he was not restrained or threatened in any way and he was not under the influence of drugs or alcohol. Subsequently, the defendant's statement was admitted as a full exhibit and read to the jury at trial.

During the defendant's trial, Pratt and Ponzillo changed portions of their testimony that was given during the defendant's suppression hearing.[3] Specifically, Pratt testified that after reviewing the defendant's signed statement, she noticed that her name had been omitted. According to her testimony, Pratt informed Ponzillo of the error and he advised her to print a new statement. Pratt also testified inconsistently regarding the error with the statement's end time. Pratt admitted that the second statement was not taken contemporaneously with the defendant's disclosures, but, instead, was generated after he had left and the error was discovered.[4] Pratt stated that she opened the program at 11:10 a.m. to correct the omission of her name from the defendant's first statement; she completed this correction in two minutes and thus entered the end time of 11:12 a.m. The end time of 11:12 a.m. was not the result of a typographical error, but was instead the correct end time for the second statement. Ponzillo then accompanied Pratt to the defendant's house where the defendant signed the corrected statement. Pratt stated that she shredded the defendant's first statement, and that she

[3] At that time, the court, *Cremins, J.*, advised counsel that these prior inconsistent statements were available to impeach the officers' credibility.

[4] Pratt testified that she prepared the substance of the statement while the defendant was present and that after the defendant left, she corrected the error of her name being omitted.

did not disclose this information during the suppression hearing because at that time she did not recall taking more than one statement, destroying the first statement or returning to the defendant's home to have him sign a second statement. Ponzillo testified similarly, that at the suppression hearing, he did not recall visiting the defendant's home to have him sign a second statement.

The defendant filed a motion for a mistrial, arguing that this inconsistent testimony denied him a meaningful suppression hearing and resulted in the admission of improper evidence at trial. In essence, the defendant asserted that the officers' testimony was so contradictory at the suppression hearing that it rendered the factual findings of the court, *Schuman, J.*, inaccurate. The court, *Cremins, J.*, denied the motion for a mistrial. In so holding, the court acknowledged that a "[h]igh degree of necessity is required before a conclusion may be reached that a mistrial is appropriate." The court found that although Pratt changed the defendant's statement to correct the omission of her name, there was no evidence that the *substance* of the statement was changed. Moreover, the defendant still signed and initialed the second statement. The court further concluded that there was no indication that the defendant requested counsel prior to signing the second statement at his home; thus, the waiver of rights form that the defendant signed at the police station was still in effect. To ameliorate any potential harm to the defendant, the court gave a spoliation instruction, which in essence, instructed the jurors that they may infer that the destroyed statement contained information that would have been damaging to the state. During closing argument, defense counsel argued to the jury about the inconsistencies within Pratt's and Ponzillo's testimonies regarding how the defendant's statement was obtained. This appeal followed.

I

The defendant asserts that the officers' inconsistent testimony tainted the constitutionality of his trial by denying him a fair suppression hearing, and therefore the court abused its discretion by denying his motion for a mistrial. We are not persuaded.

We first turn to the standard of review that controls our consideration of the defendant's claim. "Although the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) *State* v. *Guilbert*, 306 Conn. 218, 270, 49 A.3d 705 (2012).

"[T]he principles that govern our review of a trial court's ruling on a motion for a mistrial are well established. Appellate review of a trial court's decision granting or denying a motion for a [mistrial] must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a [mistrial] is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In [its] review of the denial of a motion for [a] mistrial, [our Supreme Court has] recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Sewell*, 95 Conn. App.

815, 818, 898 A.2d 828, cert. denied, 280 Conn. 905, 907 A.2d 94 (2006).

In making his claim, the defendant invites this court to examine the propriety of the underlying suppression hearing. We respectfully decline to do so, and note that our review is confined to the court's ruling on the defendant's motion for a mistrial—the ruling challenged in this appeal. We cannot agree with the defendant that the officers' inconsistent testimony amounted to a constitutional violation that affected the validity of his trial, and we conclude that the court did not abuse its discretion by denying the defendant's motion for a mistrial.

Much like the defendant in *State* v. *Owens*, 63 Conn. App. 245, 775 A.2d 325, cert. denied, 256 Conn. 933, 776 A.2d 1151 (2001), the defendant's claim in this case involves an attack on the police officers' credibility. Defense counsel cross-examined the officers, both of whom acknowledged that they had given inaccurate testimony during the defendant's suppression hearing, and defense counsel referred to these inconsistencies during closing argument. The officers' conflicting testimony, in this case, bears on their credibility. It was for the jury to ascertain the effect of the officers' differing accounts on their credibility and, ultimately, the extent to which the officers' credibility influenced the weight the jury assigned to the defendant's statement. See id., 255. In denying the defendant's motion, the court credited the testimony of the officers, finding that (1) the second statement, which was admitted as evidence in this case, was substantively identical to the first statement, (2) the defendant's signed waiver of rights form was still in effect when he signed the second statement and (3) the defendant did not request counsel prior to signing the second statement. In light of these findings, the court was within its discretion when it concluded that the drastic remedy of a mistrial was not appropriate

in the case at bar and instead provided a curative spoliation instruction to the jury as an alterative remedy.[5] We therefore conclude that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial.

## II

The defendant finally asserts that the court's denial of his motion for a mistrial allowed an involuntary confession to be used against him thereby infringing upon his due process rights. We decline to review this unpreserved claim.[6]

In his motion for a mistrial, the defendant argued that the officers' inconsistent testimony rendered his suppression hearing meaningless. At no time, however, did the defendant argue that a mistrial was appropriate because his confession was involuntary and thus admitted improperly. As a result, the trial court did not have an opportunity to rule on this matter. "[I]t is well established that [o]ur rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path [the party] rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks

---

[5] We note that the state correctly asserts that the court's remedial instruction in this case may not have been proper, as it was adopted from spoliation of evidence jurisprudence that applies only in civil cases. Our Supreme Court has held that in the civil context, the jury may infer "from the intentional spoliation of evidence that the destroyed evidence would have been unfavorable to the party that destroyed it." *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 775, 675 A.2d 829 (1996). In the criminal context, however, the trial court must apply a balancing test to decide each case based on its facts, "assess[ing] the materiality of the unpreserved evidence and the degree of prejudice to the accused, and formulat[ing] a remedy that vindicates his or her rights." *State* v. *Morales*, 232 Conn. 707, 729, 657 A.2d 585 (1995). Because the parties do not challenge the propriety of the court's spoliation instruction on appeal, we decline to address this issue.

[6] We note that the defendant did not seek review of his unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine set forth in Practice Book § 60-5.

omitted.) *State* v. *Fourtin*, 307 Conn. 186, 208, 52 A.3d 674, 688 (2012); see also Practice Book § 60-5 (this court "shall not be bound to consider a claim unless it was distinctly raised at the trial"). We therefore decline to review the defendant's unpreserved claim.

The judgment is affirmed.

In this opinion the other judges concurred.