STATE OF CONNECTICUT *v.* ANDREW HEADLEY
(9526)

DUPONT, C. J., SPALLONE and LAVERY, Js.

Argued September 11—decision released October 10, 1991

*Brian M. O'Connell,* special public defender, for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Christopher Morano,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from his conviction, after a jury trial, of the crimes of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and conspiracy to distribute narcotics in violation of General Statutes §§ 53a-48 (a) and 21a-277 (a). He claims that the trial court improperly allowed a narcotics detective, qualified as an expert, to testify that certain items found in the defendant's apartment were indicative of the trafficking of narcotics and that that court improperly admitted the statements of an alleged coconspirator. We affirm the judgment of the trial court.

The defendant was present in a Hartford apartment that was searched by the police pursuant to a warrant. The validity of the search warrant is uncontested. In the course of the search, police officers discovered a large sum of cash, a handgun, small amounts of narcotics, a sifter, small plastic bags, and a triple beam scale. When searched, the defendant was carrying approximately $890 and wearing a beeper. The defendant and other occupants of the apartment were arrested.

While the police were tagging the seized evidence, the defendant's beeper was activated by an incoming call. Detective Michael Manzi testified that he immediately telephoned the number displayed on the beeper's screen and was answered by a "distinct Jamaican voice" that asked, "Are you up? Can I come by? Are you ready?" Moments later, the unknown caller hung up. Manzi testified that he had not written down the number and it was lost when the beeper was turned off.

Manzi was qualified as an expert witness on the subject of narcotics trafficking and testified that the materials seized in the defendant's apartment were related to narcotics trafficking, leading him to conclude that the apartment was used as a drug house and that cocaine was being distributed from that location. Manzi then testified in a general sense about narcotics trafficking. He was shown each of the items found in the apartment and testified that each would customarily be used in a narcotics trafficking operation. Manzi then testified that if all of the items were found in a residence, he would conclude that it was being used as a drug factory and as a source for narcotics distribution.

The defendant claims that the hypotheticals posed to Manzi[1] were improper because General Statutes

---

[1] The testimony was as follows:

"Q: Now, Detective, taking into consideration all the items that we have

§ 54-86i precludes any expert witness' testimony as to the mental state or condition constituting an element of the crime charged.[2] The disputed questions, however, do not concern an opinion as to the mental state or condition of the defendant but relate solely to whether the items found within the residence indicated the existence of narcotics trafficking. We hold that General Statutes § 54-86i is inapplicable.

The defendant also contends that the testimony was inadmissible because it did not explain a narcotics operation to the jury, but it merely restated the government's charges. The defendant relies on two federal cases for his argument.

In *United States* v. *Castillo*, 924 F.2d 1227, 1233 (2d Cir. 1991), a police officer was qualified, over objection, as an expert regarding the typical operations of drug dealers. His testimony followed explanations and descriptions of the relevant procedures and equipment by other police officers and was held to be unnecessary. The court held that the common knowledge of the jurors and the previous testimony permitted the jury

---

gone through so lengthily . . . that being the narcotics, the scales, the semiautomatic handgun, the packaging materials, the notation on the envelope, the sifter, the beeper, and approximately $30,000 in cash—if those were all found in a residence, and based upon your training and experience, can you come to a conclusion as to the relation of the residence to narcotics trafficking?

"A: Yes, I can.

"Q: And can you tell us what that conclusion would be?

"A: My conclusion, through my experience, is that that apartment was used as a drug factory, and that cocaine was being distributed from it."

[2] General Statutes § 54-86i provides: "TESTIMONY OF EXPERT WITNESS RE MENTAL STATE OR CONDITION OF DEFENDANT. No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto, except that such expert witness may state his diagnosis of the mental state or condition of the defendant. The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone."

to understand the facts in issue without the need of expert testimony. In *United States* v. *Long,* 917 F.2d 691 (2d Cir. 1990), a police officer was qualified as an expert witness and provided extensive descriptions of organized crime families. The court held that these descriptions were marginally relevant and substantially prejudicial because they implicated the defendants in a much larger criminal organization, which was not at issue in the case. The court further held that other expert testimony was within the common knowledge of the jury. Id., 702; see *State* v. *George,* 194 Conn. 361, 373, 481 A.2d 1068, cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1984).

In the present case, Manzi's testimony regarding narcotics trafficking methods was related both to the specific crime charged and to the environment necessary to conduct a narcotics operation. Moreover, it was not cumulative of prior testimony. We, therefore, conclude that *Castillo* and *Long* do not control, and defer to the trial court's broad discretion. The court did not abuse its discretion in concluding that the jury would benefit from the admission of expert testimony. The court's determination that such evidence was more probative than prejudicial should not be disturbed. *State* v. *Delgado,* 8 Conn. App. 273, 289, 513 A.2d 701 (1986).

The defendant's second claim is that the statements of an alleged unknown coconspirator were admitted in violation of the criteria set forth in *State* v. *Vessichio,* 197 Conn. 644, 654–55, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). Under *Vessichio,* hearsay statements of a coconspirator may be admitted once the judge has made a preliminary determination that there is sufficient independent evidence to establish " '(1) that a conspiracy existed . . . (2) that the conspiracy was still in existence at the time the statement was made . . . (3) that the declarations were made in furtherance of

the conspiracy . . . and (4) that both the declarant and the defendant participated in the conspiracy . . . .' "(Citations omitted.) Id. The court must make this determination by a fair preponderance of the evidence, independent of the hearsay statements. Id.

The trial court here could have considered certain evidence in making the necessary preliminary determination. Denise McCrary, the owner of the apartment in which the defendant was arrested, testified that the defendant and another man used the apartment for the sale of narcotics. She testified that the defendant used his beeper as part of that operation and that she occasionally answered the telephone and received cryptic messages. The defendant challenges only the second element of the *Vessichio* test, contending that there was insufficient independent evidence to establish that a conspiracy was still in existence at the time the statement was made, and that any conspiracy terminated with his arrest.

"A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." General Statutes § 53a-48 (a). The existence of a formal agreement need not be proved; it is sufficient to show that the parties are knowingly engaged in a mutual plan to perform a forbidden act. *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975); *State* v. *Holmes* 160 Conn. 140, 149, 274 A.2d 153 (1970). Because of the secretive nature of criminal conspiracies, convictions are often based on circumstantial evidence. The state sought to introduce testimony from Manzi of a telephone conversation he had with an unknown man when Manzi called a number displayed on the defendant's beeper screen. Manzi testified that

he heard a "distinct Jamaican voice, a male, and the words were . . . similar to 'Are you up? Can I come by? Are you ready?' " When he attempted to engage the caller in further conversation, the caller hung up. On the basis of the detective's experience in listening to narcotics related conversations, he testified that he believed the caller wanted to purchase cocaine.

In the case of a conspiracy to perform a violent act, such as robbery or murder, absent renunciation under General Statutes § 53a-48, a conspiracy usually terminates when the crime is consummated. In crimes involving an ongoing conspiracy, such as embezzlement, gambling, or the sale of narcotics, it is more difficult to determine when the conspiracy ends.

In *State* v. *Hayes,* 127 Conn. 543, 602, 18 A.2d 895 (1941), a conspiracy conviction was upheld where it was alleged that the crime continued to the date of the information. As a matter of law, we decline to hold that a conspiracy necessarily terminates with arrest. See *United States* v. *Urrego-Linares,* 879 F.2d 1234, 1240 (4th Cir.), cert. denied, 493 U.S. 943, 110 S. Ct. 346, 107 L. Ed. 2d 334 (1989). A conspiracy does not end with an arrest where evidence of an attempt to buy or sell illicit goods indicates a continuing participation by a coconspirator in the conspiracy. *United States* v. *Grubb,* 527 F.2d 1107, 1109 (4th Cir. 1975); see also *State* v. *Couture,* 218 Conn. 309, 323, 589 A.2d 343 (1991). Without evidence to the contrary, a defendant's withdrawal from a conspiracy simultaneous with his arrest will not be presumed. *United States* v. *Grubb,* supra. The trial court properly applied the test set forth in *State* v. *Vessichio,* supra, to the testimony offered by the state.

On the basis of the facts of this case, we hold that the trial court could reasonably have found that it was

more probable than not that the conspiracy was still in existence when the unknown caller made his statements to Manzi.

The judgment is affirmed.

In this opinion the other judges concurred.