STATE OF CONNECTICUT *v.* JOHN WIDEMAN
(13385)

FOTI, LAVERY and SCHALLER, Js.

Argued September 14—decision released November 22, 1994

*Elizabeth M. Inkster,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen J. Sedensky, Jr.,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), conspiracy to commit kidnapping in the first degree and sexual assault in the first degree in violation of General Statutes §§ 53a-92 (a) (2) (A), 53a-70 (a) (1) and 53a-48 (a), aiding sexual assault in the first degree in violation of General Statutes §§ 53a-8 and 53a-70 (a) (1), and sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). He was sentenced to a total effective sentence of twenty years imprisonment. On appeal, the defendant claims (1) that the trial court violated the rules of evidence and denied him a fair trial and due process by allowing the testimony of the victim regarding her knowledge of the defendant's prior homicide convictions and pending homicide charges, (2) that the trial court abused its discretion in relying on the coconspirator exception to the hearsay rule to allow testimony concerning an assault on the victim's boyfriend, (3) that the evidence was insufficient to sustain a conviction for aiding sexual assault in the first degree, and (4) that the trial court's failure to ascertain which of the substantive offenses the jury found the defendant had conspired to commit violated the defendant's due process rights.

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

The jury could reasonably have found the following facts. On August 24, 1991, the victim was living with her boyfriend, Michael Epps, in an apartment located in building seventeen of Father Panik Village in Bridgeport. On the evening of August 24, 1991, as the victim was walking down a hallway in her building, she had a confrontation with the defendant, John Wideman. The two argued about the gates that were placed at the end of each hallway. The defendant wanted the gates to be left open to facilitate the sale of drugs in the building. The victim returned to her apartment after the confrontation. About fifteen minutes later, as she was leaving the building, she was confronted by the defendant and six other men, Kevin Rogers, Reggie Rogers, Nate Rogers, Maurice McNeil, Gene Black and Nicholas Wardlaw. Kevin Rogers told the victim that she was going to be punished for keeping the gates closed. He told her that she had a choice between being "beat down" or performing fellatio on each of them. She understood that to be "beat down" meant to be beaten to the point that she would not be able to get up. The defendant was going in and out of the building during this time but was present when Kevin Rogers gave the victim the two options.

The victim told the men she did not want to be beaten, and they took her to another building in Father Panik Village. The victim testified that she was afraid of what the men would do to her if she ran. She testified that two weeks prior to this incident, Kevin Rogers had beaten her with a belt. She also testified that she had seen Kevin Rogers, along with several of the men, attack and beat people. The victim testified that she was especially afraid of the defendant because, approximately one month prior to this incident, Epps had told her that the defendant had served time for killing two people and he was out on bond for a double homicide.

The victim was taken to a third floor apartment in building thirteen. The defendant was in the apartment at this time. The victim performed fellatio on three of the men. One of the men inserted a beer bottle into the victim's vagina as the others, including the defendant, watched and cheered. The victim was hit with a belt. When she said she wanted to stop, Nate Rogers pushed her into a stereo and bruised the back of her head.

The victim was then forced to perform fellatio on the defendant. As this was occurring, Epps, who had been looking for the victim, knocked on the apartment door after he had heard the victim crying. Kevin Rogers opened the door and threw a bottle at Epps. Epps then ran to his sister's apartment and called the police. Epps gave the police an incorrect apartment number and the police went to the wrong apartment.

When Epps knocked on the apartment door, the victim went into the bathroom and dressed. Four of the men left the apartment, but the others, including the defendant, remained. The defendant forced the victim to undress and to perform fellatio on him. While this was going on, someone called the defendant's name. The victim got dressed and left the apartment.

After calling the police, Epps tried to return to building thirteen. He encountered Kevin Rogers, Reggie Rogers and McNeil. They started beating Epps because he had called the police. They put a belt around his neck and tried to bring him back to the apartment in building thirteen. When this failed, they beat him and left him lying on the ground. An unidentified woman found him and brought him to Bridgeport Hospital. The victim met Epps at the hospital where he was treated for his injuries and released.

The next day, as the victim was returning to her apartment, she met Kevin Rogers, Nate Rogers and Reggie Rogers. She did not see the defendant. Epps

was looking out of his apartment window, however, and saw the three men approach the victim with the defendant behind them. Kevin Rogers told the victim that she was not done yet and that they were coming back to get her that night. Epps called the police and both he and the victim went to Bridgeport Hospital. The treating physician found that the victim had superficial bruises and lacerations. The victim told the physician what had happened to her.

## I

The defendant first claims that the trial court's denial of his motions in limine and for mistrial based on the victim's testimony regarding the defendant's prior criminal record and pending criminal charges violated the rules of evidence and denied the defendant a fair trial and due process. We disagree.

Prior to trial, the state indicated that it would seek to offer the victim's testimony regarding her knowledge of the defendant's criminal activities. This testimony was being offered to show the victim's state of mind. The defense filed a motion in limine seeking to preclude the testimony. The trial court ruled the evidence admissible under the state of mind exception to the hearsay rule. It determined that the probative value of the evidence outweighed its prejudicial effect. Immediately following the testimony, the court gave a cautionary instruction, limiting the use of the testimony to a consideration of its impact on the victim's state of mind.[2]

---

[2] The relevant portion of the cautionary instruction provided: "I would just further caution the jury that that type of evidence cannot be used to determine the defendant's guilt of the crimes that he is presently charged with. The fact that he may have had, if you believe that . . . the fact that he may have been involved in another crime or crimes is not proof of the fact that he committed these crimes, but it may be used by you only to determine whether or not, if that knowledge was within the mind of this victim, whether or not it is true . . . whether that's what she believed and whether it affected her state of mind."

The defendant subsequently filed a motion for mistrial arguing that the victim's testimony had prejudiced the defendant's case. This motion was denied. During the jury charge, the court again instructed the jury that the testimony was admissible only to prove the victim's state of mind, and not as substantive evidence.[3] The defendant now argues that the trial court improperly admitted the victim's testimony because it was hearsay, irrelevant and prejudicial.

The defendant describes the victim's testimony as inadmissible hearsay. "A statement made out-of-court that is offered to establish the truth of the matter contained in the statement is hearsay, and as such is inadmissible." *State* v. *Blades*, 225 Conn. 609, 632, 626 A.2d 273 (1993). "An out-of-court statement is not hearsay, however, if it is offered to illustrate circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted." Id. Here, the testimony in question was not hearsay. It was not offered for the truth of the matter asserted, but rather for the purpose of showing the victim's state of mind, i.e., her fear of the defendant.

The defendant contends that the victim's fear of him was not relevant because he claims that, although he was present, he did not participate in the initial coercion by the group of men who confronted the victim.

A victim's fear of another individual is admissible when relevant to the issues at trial. Id., 633. "A trial court has broad discretion in determining the relevancy of evidence . . . and its ruling will be disturbed only

[3] A portion of the jury charge provided: "This type of testimony which is not normally allowed was allowed under these circumstances for a limited purpose only. It was not allowed certainly to prove the truth of [it] but merely to show what her state of mind was at that time as it related to the reasonableness of her fear of physical injury being imposed upon her if she did not comply."

upon a showing of a clear abuse of discretion." (Citation omitted.) *State* v. *Peruta*, 24 Conn. App. 598, 610, 591 A.2d 140, cert. denied, 219 Conn. 912, 593 A.2d 137 (1991). Here, the defendant was charged with, among other things, the crimes of kidnapping and sexual assault. The state of mind of the victim is a relevant consideration in both of these crimes.[4] The statutes focus on the mental state of the victim when the crimes are accomplished by the "threat of force." The evidence produced at trial showed that the kidnapping was a result, in part, of the fear that the victim had of the assailants and that this fear caused her to be intimidated into going to building thirteen with them. Therefore, the victim's testimony, which revealed her fear of the defendant, was relevant to the kidnapping and sexual assault counts. The fact that the defendant did not participate in the initial coercion does not change this conclusion. The victim first argued with the defendant alone in the hallway. The victim was aware of the defendant's presence during the subsequent occurrences. Her state of mind explains why she performed fellatio on the defendant without the use of any physical force by him. Under these circumstances, the challenged testimony was relevant.

---

[4] General Statutes § 53a-92 provides in pertinent part: "KIDNAPPING IN THE FIRST DEGREE: CLASS A FELONY. (a) A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

General Statutes § 53a-91 (2) (B) defines "abduct" as "using or threatening to use physical force or intimidation."

General Statutes § 53a-70 provides in pertinent part: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY . . . . (a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

We note that other jurisdictions have permitted similar testimony by a victim where it tended to show the victim's fear of the defendant. See *People* v. *King*, 162 App. Div. 2d 473, 474, 556 N.Y.S.2d 166 (1990); *State* v. *Scarborough*, 92 N.C. App. 422, 427–28, 374 S.E.2d 620 (1988); *State* v. *Pancake*, 170 W. Va. 690, 693–94, 296 S.E.2d 37 (1982).

The defendant places some reliance on *State* v. *Duntz*, 223 Conn. 207, 613 A.2d 224 (1992), in which our Supreme Court addressed the admissibility of a victim's out-of-court statements made to a witness regarding the victim's fear of the defendant. The court held that the statements were irrelevant to the issues raised at trial and, therefore, were inadmissible. Id., 233. The court has subsequently stated, however, that its decision in *Duntz* "does not stand for the proposition that all statements of a victim's fear of a defendant are irrelevant, regardless of the reason for which they are offered." *State* v. *Blades*, supra, 225 Conn. 634. In the present case, the trial court determined that the victim's testimony was relevant to show her state of mind. We find no reason to disturb this ruling.

The defendant also contends that the testimony in question was inadmissible because the prejudicial effect of the testimony outweighed any evidentiary value. The record reflects that the trial court carefully balanced the probative value of the evidence against its prejudicial effect and determined that the prejudice to the defendant did not outweigh its probative value. "We recognize that this balancing process is an inherently difficult one, and will reverse the trial court's decision only when it is manifest that an abuse of discretion or an injustice has occurred." *State* v. *Marra*, 215 Conn. 716, 738, 579 A.2d 9 (1990). We will indulge every reasonable presumption in favor of the trial court's ruling. *State* v. *Sierra*, 213 Conn. 422, 435, 568 A.2d 448 (1990).

There was no abuse of discretion or injustice in this case. The evidence was probative because it tended to convey to the jury the victim's fear of the defendant and to explain why she did not try to run away. Under these circumstances, the trial court's decision will be upheld, especially in light of the limiting instructions given to the jury on this issue.[5] Our Supreme Court has "always given great weight to such instructions in assessing claimed errors." *State* v. *Binet,* 192 Conn. 618, 632, 473 A.2d 1200 (1984).

The defendant additionally argues that the trial court's evidentiary ruling and refusal to declare a mistrial violated his right to a fair trial and due process of law under the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. The defendant relies on *State* v. *Binet,* supra, 192 Conn. 632, where a mistrial was sought on the ground that the prosecutor's improper remarks violated the defendant's constitutional right to due process of law. "The general principle is that a mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial." (Internal quotation marks omitted.) *State* v. *DeMatteo,* 186 Conn. 696, 703, 443 A.2d 915 (1982). Because the trial court has broad discretion in passing on motions for mistrial and immediately gave a curative instruction, we conclude that the denial of the motion did not violate the defendant's right to a fair trial and due process of law.

## II

Next, the defendant claims that the trial court abused its discretion and committed reversible error in relying on the coconspirator exception to the hearsay rule

---

[5] See footnotes 2 and 3.

to deny the defendant's motion in limine that sought
to preclude the state from offering the testimony of
Epps concerning the assault inflicted on him by indi-
viduals other than the defendant. The defendant points
out that he was not present during nor charged with
the assault on Epps, and that introduction of evidence
on this topic was highly prejudicial. Following argument
on the issue, the trial court ruled that the proposed tes-
timony was relevant and admissible under the cocon-
spirator exception to the hearsay rule.[6]

Epps testified that after he left his sister's apartment,
where he had telephoned the police, he was accosted
by Kevin Rogers, Nate Rogers and Maurice McNeil.
They tried to put a belt around his neck and drag him
back to the apartment where the victim was being held.
Unable to do so, they beat him and left him lying on
the ground. Epps also testified that the next day he
overheard Kevin Rogers, Nate Rogers and Reggie
Rogers tell the victim that they were going to kill Epps.
He also heard Kevin Rogers say that he was going to
return that evening to continue sexually assaulting the
victim.

The defendant argues that this evidence should not
have been admitted. He argues that the coconspirator
exception to the hearsay rule should not have been
applied because there was no proof (1) that a conspiracy
remained in existence at the time of the beating and
threats, (2) that Kevin Rogers' actions were made in
furtherance of the conspiracy, or (3) that a new con-

---

[6] The court stated: "The statements attributed to the coconspirators can
be used if the circumstances are part and parcel of the overall circumstances
claimed here even though there is no charge of assault against this indi-
vidual. The court does feel that this is part and parcel of the overall sce-
nario and also can go towards the question of threatening of someone who
may be witnessing the case . . . and coconspirators' actions can be
attributed to a defendant and I think under these circumstances the court
will allow it."

spiracy existed between Kevin Rogers and the defendant. The defendant contends that any conspiracy to abduct and sexually assault the victim ceased to exist at the time that the three Rogers and McNeil left the apartment. The defendant points to the fact that he remained in the apartment with the victim when his companions left. He argues that there was no evidence to link the attack on Epps and the threats made the following day to the victim to any plan of concerted activity in which the defendant was involved.

"Before out-of-court statements of a coconspirator can be admitted into evidence, a trial court must make a preliminary determination, by a fair preponderance of the evidence, that there is sufficient independent evidence of a conspiracy still in existence at the time of the declaration, and that the declaration was made in furtherance of the conspiracy in which both coconspirators were participants." *State* v. *Lynch,* 21 Conn. App. 386, 391, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990). We must review the sufficiency of the evidence to sustain the trial court's finding, by a fair preponderance of the evidence, of the existence of a conspiracy. *State* v. *Vessichio,* 197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986).

"To establish the crime of conspiracy under § 53a-48 of the General Statutes, the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Lynch,* supra, 21 Conn.

App. 392. Because of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. Id.

"The evidence will be construed in a way most favorable to sustaining the preliminary determinations of the trial court; its conclusions will not be disturbed on appeal unless found to be clearly erroneous." *State* v. *Vessichio*, supra, 197 Conn. 656.

The state cites certain evidence as establishing that the conspiracy to abduct and assault the victim remained in existence at the time of the attack on Epps and at the time of the threats made to the victim. The state argues that these actions were committed in furtherance of that conspiracy. Specifically, Epps was beaten to keep him from interfering with the sexual assault on the victim, which was the object of the conspiracy. The defendant was participating in the conspiracy when he was forcing the victim to perform fellatio at the time Epps was assaulted. The object of the conspiracy was not completed when the assault on Epps took place or when, the next day, the victim was confronted by the three Rogers and the defendant. Kevin Rogers told the victim that she was "not done yet" and that they would be coming back that night.

We conclude from our review of the record that sufficient evidence existed for the trial court to find the existence of a conspiracy by a fair preponderance of the evidence, and that, therefore, the testimony of Epps was admissible under the coconspirator exception to the hearsay rule. See *United States* v. *Alvarez*, 584 F.2d 694, 701 (5th Cir. 1978).[7]

---

[7] The state asserts that the challenged testimony is alternatively admissible as "uncharged misconduct," admissible "to complete the story of the crime by placing it in the context of nearby and nearly contemporaneous happenings." The defendant argues that we should not review this claim because the state failed to raise it at trial. Because our consideration of the testimony's admissibility under the coconspirator exception to the hearsay rule is dispositive, we do not address this claim.

## III

Next, the defendant claims that the evidence was insufficient to sustain the conviction for aiding sexual assault in the first degree. The defendant was charged, in count three of the substitute information, with accessory liability for the offense of sexual assault in the first degree in violation of General Statutes § 53a-8 and § 53a-70 (a) (1).[8] On appeal, the defendant asserts that the state failed to adduce any evidence to support its claim that he intentionally assisted another in performing a sexual assault and that the trial court was thus obligated to render a judgment of acquittal with respect to that charge. We disagree.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993). " 'In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct.' " *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993).

When a defendant is charged as an accessory, the state must prove " 'criminality of intent and community of unlawful purpose.' " *State* v. *Simmons*, 201

---

[8] The information charged that the defendant did "intentionally aid or importune another person in compelling another to engage in sexual intercourse by the use of force or by the threat of use of force against the said other person . . . ."

Conn. 395, 418, 518 A.2d 35 (1986). "The accessory statute, § 53a-8, sets forth the element of intent as a twofold requirement: that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged." (Emphasis in original.) *State* v. *Harrison,* 178 Conn. 689, 694, 425 A.2d 111 (1979).

The defendant argues that there was no basis in the evidence to support the inference that he intentionally aided another in the commission of a sexual assault. He asserts that he was a mere bystander, passively observing the sexual activities of his cohorts. Contrary to the defendant's claim, there was sufficient evidence for the jury reasonably to conclude that he was guilty of aiding sexual assault in the first degree. The defendant was present the entire time the sexual assaults took place. The victim testified that, in addition to laughing and jeering, the defendant was sitting in a chair in front of the mattress on which she was forced to perform sexual acts. The victim had also testified that her fear of the defendant was one of the reasons she went to the apartment without trying to escape.

The jury's function as the trier of fact is to draw all reasonable and logical inferences from the facts as it finds them to exist. *State* v. *Gray,* 221 Conn. 713, 721, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). The jury could have inferred that the defendant's presence intimidated the victim to the extent that she feared that she would sustain physical harm if she did not perform the sexual acts demanded of her. The findings show that the defendant was not passively acquiescent. He shared the requisite criminality of intent and the community of unlawful purpose of his confederates. See *State* v. *Castillo,* 11 Conn. App. 621, 626, 528 A.2d 860, cert. denied, 205 Conn. 804, 531 A.2d 938 (1987).

## IV

The defendant's final claim is that the trial court's failure to ascertain which of the substantive offenses the jury found that the defendant had conspired to commit contravened due process.

The second count of the information charged the defendant with conspiracy to commit two substantive offenses: first degree kidnapping, a class A felony; and first degree sexual assault, a class B felony. The trial court instructed the jurors that they had to be unanimous in their finding as to which offense the defendant conspired to commit and that they could find either one or both, as long as they were unanimous. The court did not ask the jurors to announce which crime they found the defendant had conspired to commit.

The defendant did not object at trial to the court's acceptance of the conspiracy verdict. He now seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). "Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error 'only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' " *State* v. *Bush,* 33 Conn. App. 253, 261–62, 635 A.2d 820 (1993), cert. denied, 228 Conn. 923, 638 A.2d 37 (1994), quoting *State* v. *Golding,* supra, 239–40.

"The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim

itself." *State* v. *Crosby*, 34 Conn. App. 261, 264, 641 A.2d 406, cert. denied, 230 Conn. 903, 644 A.2d 916 (1994). This court "remain[s] free to dispose of the claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Pinnock*, 220 Conn. 765, 778, 601 A.2d 521 (1992). Here, the defendant has not satisfied the third condition enunciated in *Golding*. He has failed to show that a constitutional violation clearly exists and that he was deprived of a fair trial.

The defendant originally argued that since the trial court did not know which offense he was found guilty of conspiring to commit, it could not properly impose a criminal sentence. This argument was based on General Statutes § 53a-51, which requires that the penalty for conspiracy be determined by the penalty for the most serious offense that is the object of the conspiracy. In his reply brief, the defendant withdrew this argument because of the exception in § 53a-51 that "conspiracy to commit a class A felony is a class B felony." Under this statute, the range of permissible punishment is the same for both of the substantive offenses that the defendant was charged with conspiring to commit.

The defendant raises a different argument in his reply brief. He argues that the trial court should have instructed the jury to indicate which crime he was found to have conspired to commit because "the collateral consequences differ depending on the offense for which the defendant is convicted." We find this argument to be wholly speculative and without merit. The defendant provides us with no case law or legal precedent to support this argument. He raises the argument for the first time in his reply brief. The state had no opportunity to respond. It is difficult to understand the defendant's argument in light of the fact that the defendant was also convicted of both underlying offenses, kidnap-

ping and sexual assault. We find no violation of due process in the trial court's acceptance of the conspiracy verdict.

The judgment is affirmed.

In this opinion the other judges concurred.