### STATE OF CONNECTICUT *v.* RICKY HAGGOOD
### (13629)

DUPONT, C. J., and HEIMAN and SCHALLER, Js.

Argued November 7, 1994—decision released February 7, 1995

*Elizabeth M. Inkster,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Gary Nicholson,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of arson in the first degree in violation of General Statutes

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

§ 53a-111 (a) (1)[2] and conspiracy to commit arson in the first degree in violation of General Statutes §§ 53a-48[3] and 53a-111 (a) (1). The defendant was found not guilty of a third count of criminal attempt to commit arson in the first degree. On appeal, the defendant claims that the trial court improperly (1) denied his motion for judgment of acquittal when the evidence was insufficient to sustain his convictions, (2) admitted into evidence the statements of two alleged coconspirators, and (3) permitted the assistant state's attorney to make improper closing arguments to the jury. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In August, 1987, Harold Dozier and Debra Dozier purchased a house located at 97 Carmel Street in New Haven from Gladis Lee. They moved into the house with their three young children, and Gladis Lee moved into a house across the street. Gladis Lee's sons, Dean and Mark, no longer lived with their mother but were often seen at her residence. The defendant, a friend of the Lees, was also frequently seen outside the Lee house.

Shortly after moving to Carmel Street, the Doziers became involved in a block watch group organized to unify the neighborhood and to instill a sense of security in its occupants. The group also discussed ways of improving the community, including creating solutions to the area's drug problem. As time went on, Harold

[2] General Statutes § 53a-111 provides in pertinent part: "(a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . ."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

Dozier assumed a leadership role in the neighborhood block watch organization.

For several months prior to June 19, 1990, both Harold Dozier and Debra Dozier observed what they considered to be drug transactions occurring in front of the Lee residence. The Doziers observed the defendant, Mark Lee, Dean Lee and Anthony Hill participate in the transactions. Harold Dozier reported these observations to the New Haven police.

During this same period of time, Sergeant William White of the criminal intelligence division of the New Haven police department, received information that drug transactions were occurring on Carmel Street. He was informed that the defendant, Hill, Mark Lee, Dean Lee and Andre Thomas were among the persons participating in this illegal activity. White undertook surveillance of the area on several occasions and observed each of these men engage in what White concluded, on the basis of his observations of their conduct, were drug transactions.

On Friday, June 15, 1990, White participated in a police raid on an apartment house located at 561 Winthrop Avenue, New Haven, which is directly behind the Lee residence on Carmel Street. Narcotics were found at the apartment, and Mark Lee was subsequently arrested and charged with a narcotics violation. The Doziers were unaware of the fact that a raid had been conducted, or that Mark Lee had been arrested, until they were told of the occurrence by Judith Monk, a neighbor on Carmel Street.[4] Dean Lee believed, however, that the Doziers and Monk were responsible for his brother's arrest and told the defendant and Thomas of his suspicions.

---

[4] Judith Monk lived at 77-79 Carmel Street, New Haven, and was the alleged victim under the third count of the information on which the defendant was acquitted.

Subsequent to the raid at 561 Winthrop Avenue and Mark Lee's arrest, three windows at the Dozier house were simultaneously smashed by three bricks. When the Doziers looked to see what had happened, they observed the defendant running from the area of their house toward the Lee residence.

On Saturday June 16, 1990, Harold Dozier took the windows for repair. When he returned to the house, he saw the defendant, Hill, and Dean Lee leaning against a car about five houses away. An argument ensued between Hill and Harold Dozier, and Hill yelled: "[Y]ou took our house, we're gonna fuck you up, we're gonna get you."

Later on Saturday, a neighborhood festival with an antidrug theme was sponsored by the block watch group. The festival took place on Percival Street, between Carmel Street and Sherman Avenue, which was blocked off for the event. At the festival, Harold Dozier made a speech against drugs in the neighborhood. The defendant, Dean Lee, and Hill were in attendance at the festival and were present when Harold Dozier spoke.

The next day another brick was thrown at the Dozier home. Neither Debra Dozier nor Harold Dozier observed who threw the brick.

On Monday June 18, 1990, the defendant went to the Taurus Bar with Hill, Thomas, Mark Lee, Dean Lee and Tim Best for drinks. After a period of time, the friends decided to return to Carmel Street. Thomas dropped off the defendant, Hill and Dean Lee in front of Gladis Lee's house and left the area to bring Mark Lee to his girlfriend's house. Best also left the Carmel Street area to go home. When Thomas returned, the defendant, Hill, Dean Lee and a juvenile were in front of the Dozier home. They were setting off M-80 firecrackers and smoking "dust," a narcotic substance.

Thomas told the group to go home before the police were called. The group did not heed Thomas' advice, but Thomas left the scene so as not to jeopardize his parole.

The Doziers heard the M-80 firecrackers shortly after they had retired for the evening. Debra Dozier looked out the window and observed the defendant, Hill, Dean Lee and a person whom she did not recognize in front of the house. After about one-half hour, the Doziers called the police to complain about the activity in front of the house. Shortly thereafter, a police cruiser drove by the house and the noise ceased.

About thirty minutes after the cruiser had passed the house, the setting off of firecrackers resumed. The Doziers recognized the voices of the defendant, Hill, and Dean Lee coming from the front of the house, the area where the firecrackers were being ignited. The Doziers also heard a rumbling noise from the area of their front porch. After hearing the rumbling noise, Debra Dozier again looked out of the front bedroom window and observed the defendant, Dean Lee and Hill roughhousing on the Dozier property.

Debra Dozier returned to bed and about one minute later she and Harold Dozier heard a whooshing sound coming from the front porch and discovered that the porch was on fire. Harold Dozier called the police while Debra, with their three children, vacated the house. Harold Dozier grabbed a fire extinguisher and was able to extinguish the fire before the fire department arrived. At this point, Harold Dozier saw that the grass in front of Monk's house had also been set on fire. Harold Dozier immediately ran to Monk's residence as soon as he had extinguished the fire on his porch.

Captain Robert Callahan of the New Haven fire department arrived at the scene at approximately 1:35 a.m. and noted an odor of gasoline coming from the

grass and front porch areas of the Dozier house. A plastic container that gave off the odor of gasoline was found near the Doziers' front porch and the arson squad was notified. Pour patterns on the Dozier porch indicated that a flammable liquid and accelerant were used to start the fire and that the fire was incendiary in nature. Another plastic container was found on the lawn of the Monk house. This container also smelled of gasoline.

The following day, Thomas learned of the fire at the Dozier home when he picked up Mark Lee for their daily trip to a gym and Thomas saw detectives and news crews outside the Doziers' house. Later that day, at approximately 3:30 p.m., Thomas went to Mark Lee's third floor apartment at 627 Dixwell Avenue. He found Hill and Dean Lee at the apartment, but the defendant was not present. When Thomas arrived at the apartment, Dean Lee had just come out of the shower and Hill was removing his clothing to take a shower. The clothes that Hill was removing were the ones that he had been wearing the night before. Thomas noted that they smelled of smoke and gasoline.

At the apartment, Hill stated that he, the defendant, Dean Lee, and a fourth person had thrown plastic bottles containing gasoline on the Dozier house and on the Monk property and had set them on fire. He stated that he and the unnamed fourth person had set the fire at the Dozier house while the defendant and Dean Lee had set the fire at the Monk house. He also stated that they would claim as an alibi that they were all at the Branford Inn if they were questioned concerning the fires.

A warrant was issued for the arrest of the defendant, Hill, and Dean Lee as a result of these fires. On June 22, 1990, the police learned that the defendant was in the vicinity of 627 Dixwell Avenue. When the police arrived, the defendant was sitting on the porch

of those premises. When the defendant saw the police, he ran into the back entrance of the building, up to the apartment of Mark Lee. The police found him hiding behind a false wall in that apartment.

I

The defendant first claims that the evidence was insufficient to sustain his convictions of arson in the first degree and conspiracy to commit arson in the first degree. We are unpersuaded and conclude that the evidence was sufficient to support both convictions.

We begin our analysis by restating the principles that guide and define the scope of our review. When called on to review a challenge to the sufficiency of the evidence to support a conviction, we undertake a two part analysis. *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994); *State* v. *Wideman*, 36 Conn. App. 190, 202, 650 A.2d 571 (1994). "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Sivri*, supra, 126, quoting *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993); see also *State* v. *Wideman*, supra, 202.

In applying this analytical framework to the circumstances before us, we acknowledge that it appears that the defendant's conviction is premised, in large measure, on circumstantial evidence. "[I]t is of no moment that much of the relevant evidence may be circumstantial. . . . [T]here is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evi-

dence." (Citations omitted; internal quotation marks omitted.) *State* v. *Simino*, 200 Conn. 113, 117, 509 A.2d 1039 (1986); see also *State* v. *Foster*, 202 Conn. 520, 536, 522 A.2d 577 (1987).

We must also acknowledge in our review of the evidence that it is the right and the duty of the jury to draw reasonable and logical inferences from the evidence. *State* v. *Weinberg*, 215 Conn. 231, 255, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *State* v. *Little*, 194 Conn. 665, 673, 485 A.2d 913 (1984). Moreover, the jury may draw inferences on the basis of facts that it finds as a result of other inferences. *State* v. *Weinberg*, supra, 255; *State* v. *Little*, supra, 673. "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Grant*, 219 Conn. 596, 604, 594 A.2d 459 (1991). "We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

A

We first examine the claim that the evidence was insufficient to support the defendant's conviction of arson in the first degree in light of the legal standards already set forth.

The trial court instructed the jury that it might find the defendant guilty of the crime of arson in the first degree if it found that he acted either as a principal or as an accessory. The statute proscribing the crime of arson defines the offense as requiring proof that a person, with intent to destroy or damage a building, starts a fire or causes an explosion while the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied. General Statutes § 53a-111 (a) (1).

The statute creating accessorial liability requires proof that a person, acting with the mental state required for the commission of an offense, intentionally aided another person to engage in unlawful conduct. General Statutes § 53a-8. If the person has so acted, he may be prosecuted and punished as a principal. General Statutes § 53a-8. It has long been the law in Connecticut that there is no crime of being an accessory. *State* v. *Paredes*, 35 Conn. App. 360, 370, 646 A.2d 234, cert. denied, 231 Conn. 925, 648 A.2d 166 (1994). "The accessory statute merely provides an alternative means by which a substantive crime may be committed. . . ." (Citations omitted; internal quotation marks omitted.) Id., quoting *State* v. *Harris*, 198 Conn. 158, 163, 502 A.2d 880 (1985).

Here, the jury was clearly convinced that the defendant intentionally aided other persons in the commission of the crime of arson in the first degree. We have already set out the facts that the jury could have reasonably found and no purpose would be served by repeating those facts here, except those that highlight the defendant's involvement in the crime. The defendant was present when Dean Lee threatened Harold Dozier. He was also observed on the victims' property twice on the night of the fire discharging M-80 fireworks to harass the victims. In fact, the defendant was observed roughhousing on the victims' property only

one minute before the victims heard a whooshing sound and saw the fire on their porch. When the police attempted to apprehend the defendant, he fled and was found hiding behind a false wall, permitting the jury to infer consciousness of guilt from his flight. See, e.g., *State* v. *Holloway*, 209 Conn. 636, 651, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989); *State* v. *Reddick*, 33 Conn. App. 311, 330, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994).

"Viewing the cumulative effect of the evidence as a whole, and giving due weight to all the considerations urged upon us by the defendant, we are persuaded that the state has established beyond a reasonable doubt that the defendant [was an accessory to the setting of the fire at the Dozier residence]." *State* v. *Famiglietti*, 219 Conn. 605, 614, 595 A.2d 306 (1991). As in *Famiglietti*, the jury here had before it direct evidence of the defendant's presence, with his friends and cohorts, at the premises within one minute of the time that the fire was started. Id. Taking into account the defendant's presence at the premises, his conduct prior to the fire and his flight when the police attempted to execute an arrest warrant, we are convinced that the jury could have determined beyond a reasonable doubt that the defendant was an accessory to the crime.

In short, the jury, permitted to draw logical and reasonable inferences from proven facts; *State* v. *Grant*, supra, 219 Conn. 604; had sufficient evidence before it to conclude that the defendant was guilty of the crime of arson in the first degree. Accordingly, we reject the defendant's claim that the evidence was insufficient to support his conviction of that crime.

### B

The defendant also attacks the sufficiency of the evidence with respect to his conviction of the crime of con-

spiracy to commit arson in the first degree. We are again persuaded that the evidence was legally sufficient to support the verdict of the jury.

We first turn to an examination of the nature of the crime of conspiracy. Conspiracy has long been recognized as an offense separate and distinct from the substantive offense. *State* v. *Bush*, 33 Conn. App. 253, 263, 635 A.2d 820 (1993), cert. denied, 228 Conn. 923, 638 A.2d 37 (1994). "The commission of the substantive offense and a conspiracy to commit it are separate and distinct crimes. . . . The crime of conspiracy is dependent on clear principles, and has characteristics and ingredients which separate it from all other crimes." (Citations omitted; internal quotation marks omitted.) Id., 263, quoting *In re Luis R.*, 204 Conn. 630, 637, 528 A.2d 1146 (1987); *State* v. *Hooks*, 30 Conn. App. 232, 241, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993).

In order to establish the commission of the crime of conspiracy in violation of General Statutes § 53a-48, the state must prove beyond a reasonable doubt that an agreement existed between two or more persons to engage in conduct constituting a crime and that, subsequent to that agreement, one of the conspirators performed an overt act in furtherance of the conspiracy. *State* v. *Hooks*, supra, 30 Conn. App. 241, citing *State* v. *Rouleau*, 204 Conn. 240, 258, 528 A.2d 343 (1987); *State* v. *Estrada*, 28 Conn. App. 416, 420, 612 A.2d 110, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992). The state is also obligated to establish beyond a reasonable doubt that the defendant intended that conduct constituting a crime be performed. *State* v. *Jones*, 35 Conn. App. 839, 846, 647 A.2d 43 (1994).

"The gravamen of the crime of conspiracy is the unlawful combination and an act done in pursuance thereof, not the accomplishment of the objective of the

conspiracy. . . . Conspiracy is an inchoate offense the essence of which is an agreement to commit an unlawful act. . . . The prohibition of conspiracy is directed not at the unlawful object, but at the process of agreeing to pursue that object. . . . Conspiracy is an anticipatorial offense distinguished by a corrupt agreement by two or more persons to commit a specific objective crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Hooks*, supra, 30 Conn. App. 242; see also *State* v. *Rouleau*, supra, 204 Conn. 258; *State* v. *Beccia*, 199 Conn. 1, 3, 505 A.2d 683 (1986).

The state is not obligated to prove the existence of a formal agreement among the parties, but must prove that the parties engaged knowingly in a plan to commit a forbidden act. *State* v. *Lewis*, 220 Conn. 602, 607, 600 A.2d 1330 (1991); *State* v. *Wideman*, supra, 36 Conn. App. 200. As a consequence, circumstantial evidence may be used to provide the proof necessary to establish the existence of the agreement "because conspiracies, by their very nature, are formed in secret and only rarely can be proved by other than circumstantial evidence." *State* v. *Sweeney*, 30 Conn. App. 550, 559, 621 A.2d 304, cert. denied, 225 Conn. 927, 625 A.2d 826 (1993); see also *State* v. *Wideman*, supra, 200.

Our review of the evidence convinces us that, on the basis of the circumstantial evidence before it, the jury could reasonably find the existence of an agreement between the defendant and his coconspirators to work together for the unlawful purpose of igniting a fire at the Dozier residence. The defendant knew that Dean Lee blamed his brother's arrest on the Doziers. The defendant was with Dean Lee when he threatened Harold Dozier that some harm might come to him or his property in retaliation for his brother's arrest. The defendant was on the Doziers' property when an accelerant was used to set fire to the Doziers' residence. Thus, the crime of conspiracy was committed when the

defendant and his coconspirators performed the overt act of attempting to use an accelerant for the purpose of igniting the Dozier house. In order to commit the crime of conspiracy, it was not necessary that the defendant be successful in carrying out the underlying object of the conspiracy. *State* v. *Hooks*, supra, 30 Conn. App. 242.

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the evidence presented to the jury was sufficient to have permitted it to find the defendant guilty of the crime of conspiracy. Thus, we reject the defendant's claim that the evidence against him was insufficient to support a verdict of guilty of the crime of conspiracy.

## II

The defendant next claims that the trial court improperly admitted into evidence statements made by alleged coconspirators. In support of this claim, the defendant asserts that the evidence offered by the state failed to establish by a fair preponderance of the evidence the existence of a conspiracy with the defendant as a participant, a threshold requirement to the admissibility of such statements. We are not persuaded.

Statements made by coconspirators are recognized in Connecticut as an exception to the general prohibition against hearsay. See *State* v. *Vessichio*, 197 Conn. 644, 653–60, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). However, "[b]efore such statements may be admitted, the trial judge must make a preliminary determination that there is sufficient independent evidence to establish the following: (1) that a conspiracy existed . . . (2) that the conspiracy was still in existence at the time the statement was made . . . (3) that the declarations were made in furtherance of the conspiracy . . . and (4) that both the declarant and the defendant partici-

pated in the conspiracy . . . . The court must make its preliminary determination by a fair preponderance of the evidence independent of the hearsay utterances . . . a standard which is lower than the standard of evidence required to submit a charge of conspiracy to the jury. . . . Once the threshold requirement for admissibility is satisfied by a showing of a likelihood of an illicit association between the declarant and the defendant . . . the conspirators' statements are admissible and they might tip the scale in favor of the defendant's guilt . . . ." (Citations omitted; internal quotation marks omitted.) Id., 654–55; see also *State* v. *Wideman,* supra, 36 Conn. App. 200; *State* v. *Headley,* 26 Conn. App. 94, 98–99, 598 A.2d 655, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991).

We first note that the defendant does not claim that the evidence presented by the state was insufficient to prove the existence of a conspiracy, that a conspiracy was still in existence at the time that the statements were made, and that the declarations were made in furtherance of the conspiracy. *State* v. *Vessichio,* supra, 197 Conn. 655–56. Rather, the defendant limits his attack to a claim that the state had failed to produce sufficient evidence to establish by a fair preponderance that the defendant was a participant in a conspiracy existing among Hill, Dean Lee and himself. We conclude that sufficient evidence had been offered by the state to establish that fact by a fair preponderance of the evidence.

Proof by a fair preponderance of the evidence is proof by " 'the better evidence, the evidence having the greater weight, the more convincing force in [the fact finders] mind.' " *Cross* v. *Huttenlocher,* 185 Conn. 390, 394, 440 A.2d 952 (1981). The standard of proof of a fact by a fair preponderance has been met when "all the evidence considered fairly and impartially evinces a reasonable belief that it is more probable than not

that the fact is true." Id., 394–95; see also *Churchill* v. *Skjerding*, 31 Conn. App. 247, 251, 624 A.2d 900, cert. denied, 226 Conn. 914, 628 A.2d 986 (1993).

In reviewing a claim that the state failed to meet the threshold of proof regarding the existence of a conspiracy with the defendant as a participant to permit evidence of out-of-court statements by coconspirators, we must construe the evidence "in a way most favorable to sustaining the preliminary determinations of the trial court; its conclusions will not be disturbed on appeal unless found to be clearly erroneous." *State* v. *Vessichio*, supra, 197 Conn. 656.

Measured against these standards, we conclude that the defendant's challenge as to the existence of the requisite evidentiary threshold necessary to the admissibility of the statements of the coconspirators must fail. At the time of the proffer of the evidence of the out-of-court statements, the trial court had before it evidence that the fire at the Dozier house was incendiary in nature, involving the use of gasoline as an accelerant. The smell of gas was apparent in the area of the fire, and a plastic container smelling of gasoline was found on the Doziers' front lawn. The fire investigator testified that he concluded that the fire was intentionally set. The trial court also had before it evidence that Mark Lee had been arrested on a narcotics charge about three days before the fire was set at the Dozier residence. The trial court also had testimony before it that the defendant, together with Mark Lee, Dean Lee and Hill, had been observed engaging in narcotic trafficking in the neighborhood. The night after Mark Lee was arrested, windows were smashed at the Dozier house, and the defendant was observed running away after this incident. The trial court also had before it evidence that the night after Mark Lee was arrested there was a neighborhood block watch festival at which Dozier made a speech urging his neighbors to band

together in an attempt to stop the neighborhood drug problem. The evidence also indicated that the defendant, Dean Lee, and Hill were present at the block watch party. Further, the evidence indicated that threats were made against Dozier by all three, including the defendant, and, when the other two made threats against Dozier in his presence, the defendant did not disassociate himself from these threats in any way.

In addition, the evidence before the trial court disclosed that on the night of the fire, Thomas went to the Taurus Bar with Mark Lee, Dean Lee, Hill and the defendant. They all left the bar about midnight. The defendant, Hill, and Dean Lee went to Carmel Street, where they were subsequently observed by Thomas running around in front of the Dozier house, setting off M-80's directly in front of the residence. Thomas also observed that they were smoking "dust," a narcotic substance. Thomas told them to leave the area and to go home because he was concerned that they would be arrested. They did not heed his advice and Thomas left the area. The fire at the Dozier residence occurred shortly thereafter. Within one minute of his discovering the fire, Harold Dozier recognized the defendant's voice outside his window. The trial court also knew that on the day following the fire, Hill and Dean Lee were observed removing clothing and sneakers that smelled of gasoline.

As we have already stated, a conviction of the crime of conspiracy is often based on circumstantial evidence because conspiracies, by their very nature, are usually created in secrecy and frequently cannot be proven other than by circumstantial evidence. *State* v. *Vessichio*, supra, 197 Conn. 656; *State* v. *Wideman*, supra, 36 Conn. App. 201; *State* v. *Sweeney*, supra, 30 Conn. App. 559. Thus, the trial court may also make use of circumstantial evidence in making the initial determination of whether the state has met its threshold bur-

den for the admissibility of the coconspirators' statements by a fair preponderance of the evidence. See *State* v. *Vessichio*, supra, 655–56.

On the basis of our review of the evidence and given the right of the trial court to draw inferences from facts that it finds proven, we conclude that the trial court's finding that the state had established the existence of the conspiracy and the participation of the defendant as a member thereof, was not clearly erroneous.[5] Thus, the trial court properly admitted into evidence the statements of the coconspirators under the hearsay exception.

## III

The defendant finally claims that his convictions were fatally flawed when the trial court permitted the assistant state's attorney to make improper closing arguments to the jury. He claims that this conduct violated the rights secured to him by the sixth and fourteenth amendments to the United States constitution and article first, §§ 8 and 19, of the Connecticut constitution.[6] We are not persuaded.

The defendant takes issue with four separate comments offered by the assistant state's attorney during

[5] In light of our conclusion that the trial court acted properly in admitting the out-of-court declarations of the coconspirators, we do not engage in an analysis of this issue based on *Bourjaily* v. *United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987), decided after the decision of our Supreme Court in *State* v. *Vessichio*, supra, 197 Conn. 644, wherein the United States Supreme Court permitted the trial court to examine the hearsay statements together with the independent evidence in determining whether to admit the hearsay statements into evidence, nor do we express any position with respect to its applicability in future cases.

[6] Because the defendant has not provided us with an independent analysis of his claim under the state constitution, we decline to consider this unsupported state constitutional claim. *State* v. *Hamilton*, 228 Conn. 234, 246 n.10, 636 A.2d 760 (1994).

closing arguments.[7] Two of the comments were made during the state's initial closing argument, and two

[7] The excerpts that are the focal point of this claim are as follows:

(1) In the course of his initial argument, the assistant state's attorney stated in pertinent part: "[B]ut in any case the state is concerned that you understand that the state of Connecticut's concern in this matter is that you render a fair and impartial verdict as sworn officers of this court with the idea that you're here to give [the defendant] a trial, a fair trial but you're also here to protect those individuals who have been affected by this, you're here to protect the people in the community and also the property that exists in the community."

(2) Later in his initial argument, the assistant state's attorney stated in pertinent part: "Now it should be quite clear to all of you by this point in time what this case has been about. Essentially what this case has been about is it's about a family, a young family, a young professional couple with three young children who live over in the area of Carmel Street; you heard when they moved in, I believe it was in August of 1987, city of New Haven, Carmel Street. It concerns their attempts and their conduct in trying to rid the neighborhood over there of problems that had developed and to be specific about what those problems were, specifically the scourge that plagues a lot of the areas here in the city of New Haven, drug peddling, and it was clear that at least, from the state's perspective and again its your recollection that counts that Dean Lee, Mark Lee, Anthony Hill, and [the defendant] were in conjunction with one another involved in that type of activity over in the area of Carmel Street. Not only did it involve that, but it also involved the use of threats, fear, intimidation, vandalism and finally arson. Essentially, acts of urban terrorism that were perpetrated by those individuals involved in that drug trade in an attempt to silence the public's stand and efforts that the Doziers did take against drugs. That's really what this case was about and that's really the reason for the fire."

(3) In the course of the rebuttal argument, the assistant state's attorney stated in pertinent part: "Now, the circumstantial evidence of this case I think is compelling, what you have, number one is: it's clear, you know, [defense counsel] will get up and tell you that this case has nothing to do with drugs and if you want to believe that that's fine but you have some common sense here, you heard what was going on over in the Carmel Street area, the state would ask you to use your common sense, if you think that this was just a random act of vandalism, you're mistaken, that's not what it was, it was clearly a retaliation that was perpetrated by this defendant along with those others that have been mentioned in that information in an attempt to silence the Doziers for the stand that they had taken against the narcotics dealing over in the Carmel Street area."

(4) Later in the course of rebuttal the assistant state's attorney argued: "This, ladies and gentlemen, was a violent act of brutalization perpetrated against the Doziers by the organized group that was running a drug operation over on the Carmel Street area."

were made in the course of the state's rebuttal argument. The defendant concedes, as he must, that no objections were interposed to the arguments that he now asserts are improper, and he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

" 'We will not afford *Golding* review to claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial.' " *State* v. *Williams*, 231 Conn. 235, 246, 645 A.2d 999 (1994), quoting *State* v. *Young*, 29 Conn. App. 754, 766, 618 A.2d 65 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993). "[I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Williams,* supra, 246.

Our review of the entire transcript of the trial and the arguments by counsel leads us to conclude that this is not a situation where there exists any pattern of misconduct on the part of the state's attorney during the course of the trial, nor do we find any egregious acts in the four instances pressed by the defendant. It appears that the defendant "confuses effective advocacy with prosecutorial misconduct and attempts to make vigorous argument . . . a vehicle for his claim of improper prosecutorial conduct." *State* v. *Young,* supra, 29 Conn. App. 767. The acts of claimed misconduct in the course of the arguments consisted at most of isolated and brief episodes that did not reveal a pattern repeated throughout the trial, nor were they blatantly egregious. See *State* v. *Somerville,* 214 Conn. 378, 393, 572 A.2d 944 (1990); *State* v. *Young,* supra,

767. Thus, we decline to afford review since the defendant has failed to satisfy the threshold for review mandated by *State* v. *Golding,* supra, 213 Conn. App. 239–40.[8]

As a second string to his bow, the defendant asserts that if he is not successful in pressing his claim for *Golding* review, he is entitled to plain error review.[9] Other than his bare assertion that he is entitled to this extraordinary type of review, the defendant provides us with no analysis to support this claim.

"Plain error review is reserved for truly extraordinary situations where the existence of error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Domian,* 35 Conn. App. 714, 727, 646 A.2d 940 (1994), quoting *State* v. *Wright,* 207 Conn. 276, 288–89, 542 A.2d 299 (1988). "Having concluded that the [arguments of the assistant state's attorney] of which the defendant now belatedly complains did not implicate his constitutional rights so as to warrant review under *State* v. *Golding,* supra, [213 Conn. 239–40] we find that the [assistant state's attorney's statements] did not result in manifest injustice, and, therefore, [do] not permit plain error review." *State* v. *Ulen,* 31 Conn. App. 20, 38, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] We also note that with regard to unpreserved due process claims, " '[d]ue process is not to be regarded as a giant constitutional vacuum cleaner which sucks up any claims of error which may occur to a party upon microscopic examination of the trial record.' " *State* v. *McMurray,* 217 Conn. 243, 253, 585 A.2d 677 (1991), quoting *State* v. *Kurvin,* 186 Conn. 555, 564, 442 A.2d 1327 (1982).

[9] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court."